71 Cal.App.3d 568 (1977)
138 Cal. Rptr. 36
THE PEOPLE, Plaintiff and Respondent,
v.
ANTONIO MARTIN LOPEZ, Defendant and Appellant.
Docket No. 9186.
Court of Appeals of California, Fourth District, Division Two.
July 8, 1977.
*569 COUNSEL
Antonio Martin Lopez, in pro. per., and Frank Offen, under appointment by the Court of Appeal, for Defendant and Appellant.
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.
*570 OPINION
GARDNER, P.J.
In this case we explore the responsibilities of the trial court in making an adequate record that a criminal defendant "voluntarily and intelligently" elects to represent himself under Faretta v. California, 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].
Defendant pleaded guilty to possession of heroin. Criminal proceedings were suspended and he was committed to CRC. Criminal proceedings were then reinstituted and he was sentenced to prison.
On appeal, defendant contends (1) that the sentence to prison violated the terms of his plea bargain, and (2) that the record does not indicate that he voluntarily and intelligently elected to represent himself at the sentencing procedure following his return from CRC. (He had previously been represented by the public defender.) Because the latter is the weightier of the two issues, we consider it first.
The entire record on this issue is as follows:
After the public defender had indicated that the defendant wished to represent himself, the following transpired:
"THE COURT: Well, does he want to represent himself?
"[DEPUTY PUBLIC DEFENDER]: Mr. Lopez wants to represent himself. He has a right to represent himself.
"THE COURT: Is that correct? Sir, you wish to represent yourself?
"THE DEFENDANT: Yes, sir.
"THE COURT: And you want me to relieve your appointed counsel?
"THE DEFENDANT: Yes, sir.
"THE COURT: All right. Your request is granted. However, I want you to understand, sir, that I think you'd be better off to have an attorney represent you, than to represent yourself."
Following the Faretta holding that a requirement of legal competence to represent oneself was an invalid restriction on a defendant's constitutionally *571 protected right of self-representation, our Supreme Court in People v. Windham, 19 Cal.3d 121 at page 128 [137 Cal. Rptr. 8, 560 P.2d 1187], said, "... a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be." (Italics added.)
Faretta held (at p. 835 [45 L.Ed.2d at p. 582]) that to make a valid election of the right to self-representation, a defendant must "... be made aware of the dangers and disadvantages of self-representation, so that the record will establish that `he knows what he is doing and his choice is made with eyes open.' [Citation.]" (Italics added.)
(1) In this case the record does not adequately establish that the defendant made a knowing and intelligent election of self-representation. Although the court stated that defendant's decision was unwise, it did so only after granting defendant's request. Defendant was not advised on the record prior to the court's ruling of the dangers and disadvantages of self-representation. The right to counsel applies to deferred sentencing proceedings. (Mempa v. Rhay, 389 U.S. 128 [19 L.Ed.2d 336, 88 S.Ct. 254].) Violation of the right to counsel is prejudicial per se. (In re William F., 11 Cal.3d 249, 255-256 [113 Cal. Rptr. 170, 520 P.2d 986].) Consequently, a resentencing is required.
In addressing the problem of just what a court should do in ascertaining that the defendant's election is voluntary and intelligent, we do not wish to appear pedantic. Neither do we intend to establish any horrendously complex or rigid standards such as now exist in the taking of a plea of guilt (In re Tahl, 1 Cal.3d 122 [81 Cal. Rptr. 577, 460 P.2d 449]), the submission on a transcript of a preliminary examination (Bunnell v. Superior Court, 13 Cal.3d 592 [119 Cal. Rptr. 302, 531 P.2d 1086]), or the admission of a prior (In re Yurko, 10 Cal.3d 857 [112 Cal. Rptr. 513, 519 P.2d 561]). Rather, in the somewhat wistful hope that some trial judges may read this opinion, we will set forth certain suggestions on how to protect the record when a defendant chooses to go it alone. After all, in spite of the lofty historical and intellectual approach of Faretta, those with trial experience are quite aware that every prospective pro. per. is not necessarily sincerely convinced that his decision to represent himself is going to assure him of a trial more fair than if he were represented by a skilled, and experienced professional. Whether the prospective pro. per. is a naive character who sincerely believes he can represent himself better than can a lawyer, a cagey loser *572 who is going to try to reduce the trial to a shambles in the hope that somehow reversible error will creep in, a free soul with a touch of ham, or simply someone who wants to have some fun with the judicial establishment, the trial judge must recognize that the first ground on appeal is probably going to be that the defendant was allowed to represent himself without having intelligently and voluntarily made that decision. Such are the facts of life. Therefore, pragmatically, and defensively, in addition to the legal necessity of establishing that a defendant voluntarily and intelligently reaches this decision, the trial court should also protect itself  and the record. In this case, a reversal of the sentencing aspect of the case is almost meaningless. A similar reversal of a three-month jury trial would be no laughing matter. Retrials are time-consuming, expensive, traumatic to the personnel involved and a matter of considerable concern to the public.
So, faced with the demand by a criminal defendant that he elects to represent himself, what areas are to be considered and explored? We think that the discussion should fall into three general categories.[1]
First, it is necessary, as Faretta says, that the defendant "be made aware of the dangers and disadvantages of self-representation." Under this category, we suggest that the defendant be advised:
(a) That self-representation is almost always unwise and that he may conduct a defense "ultimately to his own detriment." (Faretta, supra, at p. 834 [45 L.Ed.2d at p. 581].)
(b) That he is entitled to and will receive no special indulgence by the court, and that he must follow all the technical rules of substantive law, criminal procedure and evidence in the making of motions and objections, the presentation of evidence, voir dire and argument. It should be made crystal clear that the same rules that govern an attorney will govern, control and restrict him  and that he will get no help from the judge. He will have to abide by the same rules that it took years for a lawyer to learn.
*573 (c) That the prosecution will be represented by an experienced professional counsel who, in turn, will give him no quarter because he does not happen to have the same skills and experience as the professional. In other words, from the standpoint of professional skill, training, education, experience, and ability, it will definitely not be a fair fight. It would be Joe Louis vs. a cripple, or Jack Nicklaus vs. a Sunday hacker.
(d) That he is going to receive no more library privileges than those available to any other pro. per., that he will receive no extra time for preparation and that he will have no staff of investigators at his beck and call.
Second, we feel it would certainly be advisable to make some inquiry into his intellectual capacity to make this so-called "intelligent decision." In this category, inquiry might be made of:
(a) His education and familiarity with legal procedures. For example, can he read and write? If not, how does he propose to handle such items as written exhibits and instructions?
(b) If there is any question in the court's mind as to a defendant's mental capacity it would appear obvious that a rather careful inquiry into that subject should be made  probably by way of a psychiatric examination. It would be a trifle embarrassing to get half way through a trial only to discover that a court has determined that a mentally deficient or seriously mentally ill person has been allowed to make a "knowing and intelligent" decision to represent himself.
(c) In order to show that his choice is an intelligent one, he must be made aware of the alternative, i.e., the right to counsel. He should be made aware of just what that means including, of course, his right to court-appointed counsel at no cost to himself.
(d) Perhaps some exploration into the nature of the proceedings, the possible outcome, possible defenses and possible punishments might be in order. While this may seem to be sliding back into pre-Faretta practices, it will serve to point up to defendant just what he is getting himself into and establish beyond question that "`he knows what he is doing and his choice is made with eyes open.'" (Faretta, supra, at p. 835 [45 L.Ed.2d at p. 582].)
*574 (e) It should be made clear that if there is misbehavior or trial disruption, the defendant's right of self-representation will be vacated.
Third, he should definitely be made aware that in spite of his best (or worst) efforts, he cannot afterwards claim inadequacy of representation. Pitiful though his efforts may be, he cannot thereafter complain that his self-representation was inadequate. As Faretta says (fn. 46, p. 834 [45 L.Ed.2d, p. 581]), "Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of `effective assistance of counsel.'" In other words, by choosing to represent himself, he will be throwing away one of the criminal defendant's favorite contentions on appeal.
Of course, if a defendant's decision to represent himself should surface at midtrial, a new dimension is added. At that point a careful rereading of Windham is suggested. Since an exercise of discretion is required as to just how this decision on the part of the defendant is going to affect the trial, an adequate record in this respect should be made. Windham says, "When such a midtrial request for self-representation is presented the trial court shall inquire sua sponte into the specific factors underlying the request thereby insuring a meaningful record in the event that appellate review is later required." (Italics added.) (Windham, supra, at p. 128.)
The above, as we have indicated are but suggestions. We do not attempt to establish any minimum requirements. However, it is rather obvious that an adequate inquiry be made in order for the reviewing court to ascertain that the defendant has knowingly and intelligently elected to represent himself. In this respect, we would issue a word of warning. When discussing the necessity of a proper record of a waiver of counsel in pre-Faretta days, our Supreme Court said "... we will not accept a mere superficial inquiry." (People v. Carter, 66 Cal.2d 666, 673 [58 Cal. Rptr. 614, 427 P.2d 214].)
(2) The other issue raised, violation of the plea bargain, does not require extensive discussion. Defendant raised this contention in the court below by a motion to withdraw his guilty plea. The court ordered that a reporter's transcript be prepared of the oral proceedings at the time of entry of plea. A copy of the transcript was furnished to defendant. After studying the transcript the court concluded that the bargain had not included any commitment regarding sentence. Accordingly, the motion was denied.
*575 We have likewise studied the transcript and agree with the conclusion reached by the court below. The record indicates unequivocally that defendant was advised of the possibility of a sentence to state prison and he stated on the record that no promises had been made regarding sentence.
The judgment of conviction is affirmed. The sentence is reversed and the cause is remanded with directions to conduct further proceedings consistent with this opinion.
Morris, J., concurred.
KAUFMAN, J.
Under compulsion of Faretta v. California, 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], I concur in the judgment and the remand for resentence.
Appellant's petition for a hearing by the Supreme Court was denied September 1, 1977.
NOTES
[1] An example of an advisement which was ruled sufficient may be found in People v. Harris, 65 Cal. App.3d 978, 982, footnote 2 [135 Cal. Rptr. 668]. In addition, the discussion by Judge Medina in United States v. Plattner, 330 F.2d 271, 273-274, discussed at some length in Faretta, is enlightening. And, for further guidance, we strongly recommend that excellent and invaluable treatise available to all trial judges  The Los Angeles Superior Court Criminal Trials Benchbook, pages 27-28 (Mar. 1976), 85-88 (Nov. 1975), and 89-92.2 (Dec. 1975). The written form set forth at pages 85-88 and the suggested oral discussion at pages 89-92.2 are outstanding.