[Crim. No. 32056. Second Dist., Div. One. Dec. 14, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL DURAN CERVANTES, Defendant and Appellant.

COUNSEL

Paul Halvonik and Quin Denvir, State Public Defenders, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Jonathan B. Steiner and Susan L. Burrell, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HANSON, J.—

## INTRODUCTION

Defendant Daniel Duran Cervantes (hereinafter defendant) who requested and was granted permission to represent himself in the trial court appeals from a conviction, following a jury trial, of rape in violation of Penal Code section 261, subdivision 2.

Defendant's guilt was established by the testimony of the victim, Catherine G., corroborated in part by her brother and by defendant's evasive conduct in order to avoid apprehension and trial.

## THE FACTS

Defendant, a casual acquaintance of Catherine G. (age 17 and engaged to be married to a man away in the military service), drove up to her home unannounced and uninvited and persuaded her to go with him purportedly to meet some friends of his. Defendant drove her to the Airport International Motel and when they entered room 47, no one else was there. As soon as they entered, defendant grabbed her, pushed her down on a couch and told her, "If you are going to have sex with anybody it is going to be with me until your boyfriend gets back." Catherine G. became frightened and started crying whereupon defendant slapped her, told her to quit "sniffling" and stated: "I am going to show you what a real Chicano is like." He slapped her again and grabbed her arm and

pulled her into the bedroom where he raped her while she pleaded with him "Please don't." Defendant then drove Catherine G. back to her home and let her out of his car on the divider across from her house and warned her that she had better not tell what happened or he would put a "contract" on her and "shoot" up her house. After defendant let her out, Catherine G. ran into her house crying and at first locked herself in the bathroom.

Catherine G.'s brother, David, corroborated the fact that she had initially left the family home with defendant in his car and that later when she returned home she exited defendant's car crying and distraught, ran into the house and locked herself in the bathroom and later told him and some other friends visiting their home that defendant had raped her.

When defendant was later apprehended (in the same motel room where the rape occurred) he was found hiding under a pile of clothes in a closet. Defendant also told Detective Sergeant Elizabeth Dickinson who interviewed him at the police station after he was advised of the rape charge and his *Miranda* rights that he had never heard of Catherine G. and was elsewhere when the rape occurred. Defendant, a parolee, fled to the State of Washington while he was waiting trial on the instant case where he was later arrested and returned to Los Angeles for trial.

Defendant's testimony at trial that he did take Catherine G. to the motel room, merely offered her a drink and did not even touch her was rejected by the jury.

ISSUES

On appeal defendant through the state public defender contends: (1) That he was deprived of his Sixth Amendment right to counsel in that his waiver of his constitutional right to counsel was defective because the trial court failed to advise him of the dangers and disadvantages of self-representation as required by *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]; (2) that he was deprived of his Fifth Amendment right against self-incrimination in that the record does not reflect a knowing and intelligent waiver specifically directed to his Fifth Amendment privilege prior to his testifying in his own behalf (this issue being raised for the first time during oral argument); and (3) that each of the above errors calls for a reversal per se.

## BACKGROUND

The record on appeal reflects that defendant, represented by a deputy public defender, pleaded not guilty to the rape charge and to the amendment to the information alleging one prior felony conviction (forgery in violation of Pen. Code, § 470 in Jan. 1975). Defendant then fled the jurisdiction and was rearrested in the State of Washington pursuant to a bench warrant and returned to Los Angeles County for trial.

At the bench warrant pick up proceeding in Department SW K (Hon. Bernard Lawler presiding) on December 13, 1976, defendant for the first time requested the public defender be relieved and he be granted pro. per. privileges. His motion was granted. Defendant thereafter representing himself made a pretrial discovery motion in Department SW K which was granted in part and the sheriff was directed to supply him with a typewriter and reasonable amounts of legal office supplies. He made a motion for appointment of an investigator which was denied without prejudice but his motion to continue the trial to March 31, 1977, was granted. He then renewed his motion in Department SW K to appoint a legal investigator which was again denied without prejudice. Defendant thereafter filed an affidavit to disqualify Judge Lawler pursuant to Code of Civil Procedure section 170.6 and the matter was then transferred to Department SW A (Hon. Thomas W. Fredricks presiding). His re-renewed motion in Department SW A for a legal investigator at county expense was granted, a renewed motion to amend discovery was granted and then denied, and his motion to continue the trial to April 13, 1977, was granted.

On April 13, 1977, the case was transferred from Department SW A to Department SW C (Hon. Burch Donahue presiding) where the matter was tried, resulting in a hung jury. Defendant's motion for transcript of the court reporter's notes of the testimony of witnesses at the trial for use at the second trial was granted without charge to him and on his motions the retrial was continued first to July 20, 1977, and then to September 14, 1977.

On September 14, 1977, the case was again transferred from Department SW C to Department SW H (Hon. James F. Healey presiding) for retrial and then retransferred to Department SW B (Hon. John A. Shidler presiding) where the matter was tried for a second time resulting in a guilty verdict. Defendant appeals from this judgment of conviction.

## DISCUSSION

## I

### DID THE TRIAL COURT ERR BY FAILING TO ADEQUATELY WARN DEFENDANT OF THE RISKS AND PITFALLS INVOLVED IN SELF-REPRESENTATION? YES.

■ In the instant case the only portion of the record which can be construed as an implied warning to defendant of the risk entailed by self-representation is the court's statement to defendant on December 13, 1976, in Department SW K that "You know you are not accorded any special privileges and you will be treated the same as if you had counsel."[1]

[1]The reporter's transcript reflects that at the time of the trial resetting in Department SWK on December 13, 1976, the public defender had been appointed and the following colloquy occurred:

"THE DEFENDANT: Your Honor, I would like to know if I could be able to relieve my public defender and be able to represent myself.

"THE COURT: Well, do you know what you are charged with?

"THE DEFENDANT: Yes.

"THE COURT: What are you charged with?

"THE DEFENDANT: Well, one is a violation of probation and one is a forcible rape.

"THE COURT: You want to represent yourself?

"THE DEFENDANT: Yes, sir.

"THE COURT: You know you are not accorded any special privileges and you will be treated the same as if you had counsel; do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: How far have you gone in school?

"THE DEFENDANT: Through college, two years.

"THE COURT: All right. I'll permit you to represent yourself.

"THE DEFENDANT: Will I be able to go in pro per tanks in Los Angeles County Jail?

"THE COURT: Yes. I'll direct that you be accorded pro per privileges."

Pursuant to California Rules of Court, rule 12(a), we augmented the record on our own motion by ordering up the reporter's transcript of the first trial in Department SW C in which defendant represented himself and which ended in a hung jury. The record is silent as to any inquiry by the court in respect to defendant's pro. per. status.

The reporter's transcript of the second trial which commenced on September 14, 1977, in Department SW B contains only the following colloquy pertaining to defendant's self-representation:

"THE COURT: During the trial of the case the jurors have to be careful not to speak to anybody who might be a witness or party to one side or the other, not that what you say would be taking evidence outside the courtroom, but it might look like it and we want to avoid the appearance of any wrongful evidence taking.

"The evidence at trial is evidence presented in the courtroom and so on. I think we can get by. I don't think we will have any problem. Mr. Cervantes has been in court and he knows about it. You don't want a public defender even to assist you?

"THE DEFENDANT: No, sir."

We conclude that the above statement standing alone does not constitute an adequate warning of the dangers and pitfalls defendant would likely encounter if he represented himself under pre-*Faretta* or *Faretta* or post-*Faretta* requirements. Here the record does not adequately demonstrate that the defendant made a knowing and intelligent election of self-representation. Once again the trial court has failed "to navigate adroitly between the Scylla of denying a defendant the right to determine his own fate and the Charybdis of violating his right to counsel by acceptance of an ineffectual waiver . . . ." (*People* v. *Carter* (1967) 66 Cal.2d 666, 667 [58 Cal.Rptr. 614, 427 P.2d 214].)

In pre-*Faretta* days the state Supreme Court in *Carter* made it clear that it "will not accept a mere superficial inquiry" (*id.*, at p. 673) by the court before granting or denying a defendant's request to appear in pro. per. Nor does the instant record satisfy *Faretta* which requires that "[t]he record . . . establish that '[defendant] knows what he is doing and his choice is made with eyes open,' [citation]" (422 U.S. at p. 835 [45 L.Ed.2d at p. 582]) and that he was "made aware of the dangers and disadvantages of self-representation." (*Ibid.*)

In the post-*Faretta* case of *People* v. *Lopez* (1977) 71 Cal.App.3d 568 [138 Cal.Rptr. 36], the court pointed out that "[e]very prospective pro. per. is not necessarily sincerely convinced that his decision to represent himself is going to assure him of a trial more fair than if he were represented by a skilled, and experienced professional. Whether the prospective pro. per. is a naive character who sincerely believes he can represent himself better than can a lawyer, a cagey loser who is going to try to reduce the trial to a shambles in the hope that somehow reversible error will creep in, a free soul with a touch of ham, or simply someone who wants to have some fun with the judicial establishment, the trial judge must recognize that the first ground on appeal is probably going to be that the defendant was allowed to represent himself without having intelligently and voluntarily made that decision . . . [and any reversal on that ground is] no laughing matter. Retrials are time-consuming, expensive, traumatic to the personnel involved and a matter of considerable concern to the public." (*Id.*, at pp. 571-572.)

The *Lopez* court pointed out that by reason of the foregoing "[p]ragmatically, and defensively, in addition to the legal necessity of establishing that a defendant voluntarily and intelligently reaches this decision, the trial court should also protect itself—*and the record.* . . ." (71 Cal.App.3d at p. 572, italics added.) The court in some detail suggests three

categories for consideration and exploration *on the record,* namely (1) that defendant is aware of the dangers and disadvantages of self-representation; (2) that the defendant has the intellectual capacity to make this decision; and (3) that he understands that he cannot later claim inadequacy of representation.[2]

## II

DID THE TRIAL COURT COMMIT ERROR BY FAILING TO ADVISE DEFENDANT, WHO WAS APPEARING IN PRO. PER., OF HIS FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION BEFORE HE TESTIFIED? YES.

In *People* v. *Solomos* (1978) 83 Cal.App.3d 945 [148 Cal.Rptr. 248], the reviewing court reversed a conviction for grand theft auto (Pen. Code, § 484) following a jury trial on the ground that the trial court had committed reversible error by allowing a pro. per. defendant to testify without first advising him of his Fifth Amendment privilege not to testify and in failing to obtain a knowledgeable and voluntary waiver of the privilege. The Court of Appeal rejected the People's argument that by assuming his own defense under *Faretta* defendant Solomos waived his Fifth Amendment right. We quote at length from pages 953-954:

"Although it has been held that a defendant who is represented by counsel waives his privilege not to testify if he voluntarily takes the stand (e.g., *People* v. *Huerta* (1957) 148 Cal.App.2d 272, 274 [306 P.2d 505]) the same rule does not apply where the defendant proceeds in propria persona. This is because in the latter case, it cannot be presumed that the defendant was aware of his Fifth Amendment privilege. As stated in *People* v. *Kramer* (1964) 227 Cal.App.2d 199 [38 Cal.Rptr. 487]: ' "where the record clearly shows that the accused was not informed of his constitutional and statutory privilege not to testify . . . , his voluntary action in testifying would not, under the circumstances constitute a waiver of his privilege. In order to waive a privilege, it must be an act based upon knowledge and intelligent choice. Since the accused was not so advised, nor has it been shown that he was possessed of the knowledge of his privilege, we are forced to the conclusion that his act in testifying

---

[2]Generally also see "[t]he game of 'waive the lawyer' . . ." as discussed in *People* v. *Weston* (1970) 9 Cal.App.3d 330, 334-335 and footnote 4 [87 Cal.Rptr. 922]; The Los Angeles Superior Court Criminal Trials Benchbook, pages 27-28 (Mar. 1976), 85-88 (Nov. 1975), and 89-92.2 (Dec. 1975); see also Yegan, *Faretta—The California Experience* (Nov./Dec. 1978) 53 State Bar J. No. 6, pages 384-394.

was in ignorance of his right not to do so." ' (*Id.,* at p. 202, quoting from *Cochran* v. *State* (Fla. 1960) 117 So.2d 544, 547 [79 A.L.R.2d 638].)

■ "Subsequent California cases have recognized the principle that permitting a defendant who is not represented by counsel to testify on his own behalf without advising him of his right not to testify constitutes error of constitutional dimensions. (*People* v. *Glaser* (1965) 238 Cal.App.2d 819, 828-829 [48 Cal.Rptr. 427]; *People* v. *Wells* (1968) 261 Cal.App.2d 468, 481 [68 Cal.Rptr. 400]; *People* v. *Thomas* (1974) 43 Cal.App.3d 862, 867-868 [118 Cal.Rptr. 226]; *People* v. *Barker* (1965) 232 Cal.App.2d 178, 182 [42 Cal.Rptr. 651].)

" . . . . . . . . . . . . . . . . .

"None of these arguments are convincing. Appellant's choice to act as his own attorney under *Faretta, supra* [422 U.S. 806], although amounting to a waiver of his Sixth Amendment right to counsel, cannot affect his Fifth Amendment privilege not to testify. Furthermore, it would be inappropriate to assume that appellant, who had no prior criminal record and had simply pleaded guilty to a speeding charge in Washington, could reasonably have been aware of a constitutional right not to testify at his own trial. It is well established that the record must affirmatively show an informed and intelligent waiver of a constitutional right. (*Carnley* v. *Cochran* (1962) 369 U.S. 506, 514 [8 L.Ed.2d 70, 76, 82 S.Ct. 884]; *In re Johnson* (1965) 62 Cal.2d 325, 334 [42 Cal.Rptr. 228, 398 P.2d 420].) We are not permitted to speculate as to what may have transpired off the record in the area of constitutional rights. (See *People* v. *Wells, supra,* 261 Cal.App.2d 468, 481.)"

## III

DOES EACH OF THE FOREGOING ERRORS CALL FOR A REVERSAL PER SE OR DOES THE HARMLESS ERROR TEST OF CHAPMAN V. CALIFORNIA (1967) 386 U.S. 18, OR SOME OTHER STANDARD OF REVIEW APPLY?

A. *Failure of the Trial Court to Advise Defendant of his Constitutional Right Against Self-incrimination*

■ In *People* v. *Solomos, supra,* 83 Cal.App.3d 945, the Court of Appeal in concluding that failure to advise a defendant in pro. per. of his constitutional right not to testify at his own trial constituted error which

was reversible per se acknowledged the existence of *People* v. *Wells* (1968) 261 Cal.App.2d 468 [68 Cal.Rptr. 400], but elected to follow the Court of Appeal cases of *People* v. *Kramer* (1964) 227 Cal.App.2d 199 [38 Cal.Rptr. 487], and *Killpatrick* v. *Superior Court* (1957) 153 Cal.App.2d 146 [314 P.2d 164].

We note that *Wells* post-dates both *Kramer* and *Killpatrick* and defendant Wells' petition for a hearing by the Supreme Court was denied. In the instant case we elect to follow *Wells* which stated: "Some incursions on the guarantee against self-incrimination may turn out to be so harmless in the setting of a particular case that they do not warrant reversal. (*Chapman* v. *California* (1967) 386 U.S. 18, 22-24 [17 L.Ed.2d 705, 709-711, 87 S.Ct. 824 (24 A.L.R.3d 1065)]; *People* v. *Ross* (1967) 67 Cal.2d 64, 73-74 [60 Cal.Rptr. 254, 429 P.2d 606]; see also *People* v. *Glaser, supra,* 238 Cal.App.2d at p. 829; *People* v. *O'Bryan* (1913) 165 Cal. 55, 67 [130 P. 1042].) Affirmance is possible notwithstanding the error, if the reviewing court finds no reasonable possibility that the error affected the outcome of the trial. (*People* v. *Ross, supra.*)" (261 Cal.App.2d at p. 481.)

Here, Catherine G. testified that defendant Cervantes picked her up at her home, took her to a motel room where they were alone and raped her and then returned her to her home where as she exited his car crying he threatened to put a "contract" on her and "shoot" up her house if she told anyone. The arresting police officer testified that defendant was hiding under a pile of clothes in a closet at the time of his arrest, and Sergeant Dickinson testified that defendant denied ever hearing of Catherine G. and gave her an alibi as to where he was at the time the rape occurred.

The foregoing testimony during the prosecution's case in chief coupled with the strong corroborative testimony that it was the defendant with whom Catherine G. left her house and that when she was returned home by him she entered the house crying and locked herself in the bathroom constituted overwhelming evidence of defendant's guilt.

In view of the state of the evidence as described above, the only hope defendant had for a defense verdict was to take the stand and testify. He denied Catherine G.'s testimony as to what transpired in the motel room, denied that he was hiding under the clothing at the time of his arrest and gave an explanation why he told Officer Dickinson that he did not know Catherine G. The jury disbelieved his testimony and resolved the credibility issue against him.

We conclude by reason of the foregoing that notwithstanding the error of failing to advise defendant of his privilege against self-incrimination there is no reasonable possibility that the error affected the outcome of the trial and it was harmless beyond a reasonable doubt. (*Chapman* v. *California, supra,* 386 U.S. 18.)

B. *Failure of the Trial Court to Adequately Warn Defendant of the Hazards of Self-Representation*

Justice Blackmun in his dissent in *Faretta* v. *California, supra,* 422 U.S. 806, pointed out that the majority "opinion leaves open a host of other procedural questions." (*Id.,* at p. 852 [54 L.Ed.2d at p. 591].) One of the procedural questions which flew out of the pandora's box opened by *Faretta,* as raised in the instant case, is the standard to be employed, if any, where a defendant's request to represent himself was granted but the court inadequately advised him of the dangers and pitfalls involved in appearing in pro. per.

■ We reject the contention of defendant in the case at bench that failure of the trial court to adequately warn defendant of the hazards and risks of self-representation requires an automatic reversal. We conclude that the *Chapman* test applies.

The Sixth Amendment speaks specifically in black letter words of a right to counsel and makes no direct reference to the right of self-representation. *Faretta* certainly does not prescribe such an extreme view as calling for a reversal per se.[3]

Nor do we perceive the language in *People* v. *Lopez, supra,* 71 Cal.App.3d 568, 571, which stated that "[v]iolation of the right to counsel is prejudicial per se," citing as authority *In re William F.* (1974) 11 Cal.3d 249, 255-256 [113 Cal.Rptr. 170, 520 P.2d 986], as either controlling or persuasive. *Lopez* and *William F.* relied upon in *Lopez* are factually distinguishable from the case at bench which renders *Lopez* and the *William F.* statement from that case of dubious authority.

---

[3] The majority opinion in *Faretta* (Burger, C. J. and Blackmun and Rehnquist, JJ. dis.) concluded that "when naturally read," (422 U.S. at p. 821 [54 L.Ed.2d at p. 574]) the Sixth Amendment *implies* a right of self-representation. The basic law and underlying rationale of *Faretta* "[p]ut quite simply . . . is that the state may not constitutionally prevent a defendant charged with commission of a criminal offense from controlling his own fate by forcing on him counsel who may present a case which is not consistent with the actual wishes of the defendant. . . ." (*People* v. *Windham* (1977) 19 Cal.3d 121, 130 [137 Cal.Rptr. 8, 560 P.2d 1187].)

*Lopez* involved failure of the court to advise defendant of the dangers and disadvantages of self-representation at a deferred sentencing proceeding following a guilty plea to possession of heroin pursuant to a plea bargain proceeding at which he was represented by counsel. In *William F.* defendant (a juvenile) had counsel but the trial court denied his counsel's request to present argument on his behalf at the jurisdictional hearing. The Supreme Court in reversing held that the minor's counsel was entitled to argue as an integral part of the minor's right to be represented by counsel in the first instance. Here, defendant Cervantes unequivocally advised the court that he did not want counsel at all and wanted to represent himself for all purposes during all the proceedings which he did.

We perceive a signal difference between a case where an indigent was not advised at the time of trial on the merits that he could have an attorney appointed by the court at public expense and did not waive his right to counsel as in *In re Smiley* (1967) 66 Cal.2d 606 [58 Cal.Rptr. 579, 427 P.2d 179], which requires a reversal per se and one where defendant, as in the instant case, was fully aware of his right to counsel, requested to represent himself pursuant to *Faretta* and in fact was granted self-representation but which was predicated on an insufficient record with respect to a warning of the pitfalls involved in self-representation as mentioned in *Faretta.*

In *Faretta* the Court said at page 834 [54 L.Ed.2d at p. 581]: "It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' *Illinois* v. *Allen,* 397 U. S. 337, 350-351 (Brennan, J., concurring)." (Fn. omitted.)

Justice Blackmun in his dissent in *Faretta* concluded with the statement "If there is any truth to the old proverb that 'one who is his own lawyer has a fool for a client,' the Court by its opinion today now bestows a *constitutional* right on one to make a fool of himself." (422 U.S. at p. 852 [54 L.Ed.2d at p. 592], original italics.)

The *Faretta* decision which bestows an "implied" constitutional right for a defendant to make a fool of himself should not be extended to make a fool out of the efficient and economical administration of the entire criminal justice system by requiring a reversal per se because a trial judge did not, in the eyes of a reviewing court, properly warn a defendant of the foolishness of his request to make a fool out of himself.

We conclude that a defendant who has unequivocally requested permission to conduct his own defense pursuant to *Faretta* should not be precluded on the theory of "invited error" or "estoppel" from raising on appeal the issue of the trial court's failure to adequately warn him of the dangers entailed in self-representation.

However, we also conclude that some standard of review short of an automatic reversal should be applied in order to inject more fairness into a defendant's game of "waive the lawyer." The effect of a reversal per se rule under circumstances where defendant may otherwise have a lost cause is not compatible with maintaining an efficient and economical system of justice. As previously noted, "[r]etrials are time-consuming, expensive, traumatic to the personnel involved and a matter of considerable concern to the public." (*People* v. *Lopez, supra,* 71 Cal.App.3d 568, 572.) Accordingly, we hold that the standard to be applied here is the "harmless beyond a reasonable doubt" error test of *Chapman* v. *California, supra,* 386 U.S. 18.

By rejecting the rule presuming prejudice per se under the facts of the instant case, we are not unaware of the rationale behind the rule "that no realistic measure of prejudice resulting from counsel's nonparticipation can be made when, because of the very absence thereof, the record fails to reflect what different direction the proceedings might have taken and what different results might have been obtained." (*In re William F., supra,* 11 Cal.3d 249, 256.) Nor by adopting the *Chapman* test in the instant case are we unaware of *People* v. *Ibarra* (1963) 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], and its progeny pertaining to a defendant's right on appeal to assert as a ground the ineffective assistance of counsel *or* that if defendant Cervantes' waiver of counsel was *error free,* he could

not on appeal claim that he ineffectively represented himself. (*People* v. *Harris* (1977) 65 Cal.App.3d 978 [135 Cal.Rptr. 668].)

However, even though defendant Cervantes represented himself during the proceedings *if* we, arguendo, afforded him a claim of ineffective assistance of counsel on appeal we could not say after having reviewed the entire record that the proceedings were reduced to "a farce and a sham" (*People* v. *Ibarra, supra,* 60 Cal.2d 460, 466); that he was deprived of a crucial defense (*People* v. *Williams* (1970) 11 Cal.App.3d 970, 979 [90 Cal.Rptr. 292]; or that the record demonstrates as a reality, as opposed to a matter of speculation, that his self-representation was ineffective (*People* v. *Reeves* (1966) 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35]).

Moreover, we note that while the trial court's admonition to defendant Cervantes that he would be afforded no "special privileges and [would] be treated the same as if [he] had counsel" did not constitute an adequate warning of the hazards encountered in self-representation, it did give him the most significant consequences of going it alone. We further note that defendant declined an offer by the trial court to furnish him with a public defender to assist him while he conducted his own defense.[4]

In the instant case defendant Cervantes was granted his request to represent himself. His conduct of the first trial and of the second trial conclusively establishes that he was fully cognizant of the nuances of criminal procedure. He conducted pretrial discovery and managed by use of a Code of Civil Procedure section 170.6 motion to maneuver himself out of one court which denied his motion for a legal investigator at county expense into a court which granted his motion; he marshalled his witnesses and conducted his defense in two jury trials, the first of which resulted in a hung jury; and he obtained a complete transcript of his first trial for use in the second trial which culminated in a conviction of rape by a unanimous jury verdict.

Accordingly, by reason of the foregoing, we hold the trial court's error of inadequately warning defendant of the pitfalls and hazards involved in self-representation is "harmless beyond a reasonable doubt." (*Chapman* v. *California, supra,* 386 U.S. 18.)

---

[4]See footnote 1, *ante,* at page 286.

## DISPOSITION

The judgment of conviction is affirmed.

Lillie, Acting P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 8, 1979. Tobriner, J., was of the opinion that the petition should be granted.