Filed 1/8/24  P. v. Berry CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079431 |
| v. | (Super.Ct.No. INF2100060) |
| JOSEPH RYAN BERRY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Rene Navarro, Judge.

Reversed.

Rex Adam Williams, under appointment by the Court of Appeal, for Defendant

and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Charles C. Ragland, Assistant Attorney General, and Christopher P. Beesley and

Michael J. Patty, Deputy Attorneys General, for Plaintiff and Respondent.

1

After two trials in which Joseph Ryan Berry represented himself, a jury convicted him of making criminal threats.  On appeal, Berry argues the trial court erred when it granted his self-representation request.[1]  We reverse.

BACKGROUND

In January 2021, the Riverside County District Attorney charged Berry with making a criminal threat after Berry threatened a mechanic over the phone.  (Pen. Code[2], § 422.)

The next month, before the preliminary hearing, Berry moved to represent himself under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).  In doing so, Berry initialed and signed a "Petition to Proceed in Propria Persona" form, also known as a *Faretta* waiver.  This form informed Berry that he had a right to a lawyer, that one would be provided to him if he could not afford to hire one himself, that by waiving his right to counsel he also waived his right to appeal on the basis of ineffective assistance of counsel, that he would have "to follow all of the many technical rules of substantive law, criminal procedure and evidence," that the prosecution would be represented by an experienced and specialized lawyer, and that he would have to conduct every phase of trial including making pretrial and preliminary motions, impaneling the jury, making opening and closing statements, examining witnesses, making objections, and handling

---

[1]  In his opening brief, Berry also argued the court erred by denying as untimely a request for diversion.  Following *People v. Braden* (2023) 14 Cal.5th 791—Penal Code section 1001.36 diversion requests must be made before jeopardy attaches—he withdrew this argument.

[2]  Unlabeled statutory citations refer to the Penal Code.

jury instructions. It also included the "advice and recommendation of this court that" he not represent himself. Berry initialed each admonition and signed.

At the hearing on his request, Berry did not start by declaring that he wanted to represent himself. Rather, Berry said he wanted to fire his public defender because of a conflict of interest. When asked to explain what conflict there was, Berry stated, "to the courts, I am a threat to the public. On paper it says the public defender is . . . defending the public. So obviously it's self-explanatory." The court told him that if there was a conflict, and the public defender agreed, it could appoint an attorney from the conflict panel who would represent Berry. Berry responded, "if that's the procedure, let's do it." The court then explained the conflict panel procedure. Berry asked when he could start that procedure because "I've been down two weeks already, and . . . I've waived no time."

The public defender told the court that their office did not have a conflict of interest with Berry. He expressed his belief that Berry "does not want to necessarily represent himself, but he would like me to no longer be his lawyer." The court then acknowledged that though there may not be a conflict of interest, Berry's claims indicated there had been a breakdown of communication that would justify relieving the public defender's office.

At this stage of the hearing, Berry had not made a request to represent himself, and the trial court asked Berry if he wanted an attorney from the conflict panel. Rather than answer, Berry requested a bail reduction, which the court said it would not consider at

3

that time.  At that point, Berry said, "[w]ell, I would like to not waive any time and push forward with pro per."  The court told Berry he was not waiving any time either way, then asked if he would be ready for the preliminary hearing set for the next week.  Berry responded, "it's not a rocket science case here.  All you've got to do is subpoena the phone records, and it will tell you that I never threatened the man."  The court asked Berry again whether he would be ready, and Berry responded, "I'm ready to push forward on my right to a speedy trial."

The court indicated it would be willing to grant his request to represent himself, and that it would not change the preliminary hearing date.  However, the court advised Berry that "it doesn't appear to me that you're going to be ready to do the preliminary hearing next week."  Berry insisted he was ready, and the court responded, "that might be what you feel now, but once you do the preliminary hearing if you're . . . held to answer . . . you might feel differently."  It then asked whether Berry had ever represented himself before, and Berry said he had not.

The court reiterated that it could appoint a conflict panel attorney for Berry, "[a]nd then if you still feel that you want to represent yourself, you can."  Berry responded, "[i]f that's the procedure, that's fine, but come that day, I will go pro per."  The court asked him to repeat himself, and Berry responded simply, "I'm going to go pro per."  The court then granted his request to represent himself.

Berry had his first trial in July 2021, but the jury was unable to reach a verdict.  In September 2021, following a second trial, the jury convicted Berry on the sole count.

4

Berry requested and received a public defender for the sentencing phase. In May 2022, Berry filed a motion for new trial arguing the court's decision to grant his request to represent himself was error. The trial court denied the motion.

DISCUSSION

Berry argues his *Faretta* waiver was equivocal and the court failed to advise him properly of the consequences of his decision. He also argues this error is per se reversible. We agree the court's advisement to Berry was inadequate, and we cannot find the error harmless beyond a reasonable doubt.

"A criminal defendant has a right to represent himself at trial under the Sixth Amendment to the United States Constitution." (*People v. Welch* (1999) 20 Cal.4th 701, 729 (*Welch*).) To do so, defendant must meet three conditions: "[f]irst, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, he must make his request unequivocally. [Citations.] Third, he must make his request within a reasonable time before trial." (*Ibid.*) On appeal, "[c]ourts must indulge every reasonable inference against waiver of the right to counsel." (*People v. Marshall* (1997) 15 Cal.4th 1, 20.)

In this appeal, there is no dispute that Berry was mentally competent when he made his request, and that his request was made a reasonable time before trial. We conclude, however, that Berry was not adequately advised of the dangers of self-representation.

5

*A. Advisement of the Dangers of Self-Representation*

We conclude that Berry did not make his request to represent himself knowingly and intelligently, having been advised of the dangers of self-representation. Before a defendant may waive his right to counsel, he " ' "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " ' " (*People v. Burgener* (2009) 46 Cal.4th 231, 241 (*Burgener*).) Some cases have suggested a set of four general advisements, all of which appeared on the waiver form Berry signed. These are (1) "that self-representation is almost always unwise," (2) that the defendant will not be given any special treatment and will have to follow all the same rules as a lawyer, (3) that the prosecution will be represented by an attorney, and (4) that the defendant will not receive special library privileges or extra time and will not have a staff of investigators available. (*People v. Lopez* (1977) 71 Cal.App.3d 568, 572-573 (*Lopez*).)

Nevertheless, that set of advisements is not mandatory. " ' "No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation." [Citation.] Rather, "the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case." ' " (*Burgener*, *supra*, 46 Cal.4th at p. 241.) "Thus, '[a]s long as the record as a whole shows that the defendant understood the dangers of self-representation, no particular form of warning is required.' " (*Ibid.*) "On appeal, we independently examine the entire record to

determine whether the defendant knowingly and intelligently waived the right to counsel." (*Ibid.*) In some cases, it may be that the signing of the written waiver of rights alone—particularly if the defendant's understanding of them is confirmed by the trial court—could be sufficient to establish a knowing and intelligent waiver. (*People v. Miranda* (2015) 236 Cal.App.4th 978, 986; citing *People v. Blair* (2005) 36 Cal.4th 686, 709 (*Blair*), disapproved on other grounds in *People v. Black* (2014) 58 Cal.4th 912, 919-920.)

Here, however, we are not persuaded the trial court adequately warned Berry of the pitfalls of self-representation. Because self-representation is typically an unwise choice, and because inexperienced defendants may not be aware of the challenges they will face, a court should be pointed and definitive in warning a defendant about the dangers of self-representation. (See *Von Moltke v. Gillies* (1948) 332 U.S. 708, 724 [requiring a "penetrating and comprehensive examination"]; *People v. Waldron* (2023) 14 Cal.5th 288, 305 (*Waldron*) [serious and weighty responsibility on judge to ensure "knowing and voluntary" waiver of counsel].) Trial courts often provide direct warnings to defendants considering self-representation that conspicuously explain what the difficulties will be. In *People v. Koontz* (2002) 27 Cal.4th 1041, 1071, for example, our Supreme Court found sufficient an advisement that included telling the defendant (a) that " 'it is generally not a wise choice to represent yourself in a criminal matter. . . . I just said that as strongly as I could say it' " (*ibid.*); (b) the penalties the defendant faced; (c) that the judge cannot help him and give him " 'special treatment' " (*id*. at p. 1072);

(d) that he will be " 'opposed by a trained prosecutor' " and have to " 'comply with all the rules of criminal procedure and evidence just as an attorney must . . . unless you have been practicing law for some time, you wouldn't know many of them" (*ibid*.); and (e) that the court had "serious questions" (*ibid*.) about the defendant's competency to represent himself but that the defendant could not appeal on such a basis.

Berry initially said, "let's do it" when the court suggested appointing panel counsel—the opposite of a self-representation request, coming moments before that request. His public defender at the time said that he believed that Berry "does not want to necessarily represent himself." When again asked if he wanted panel counsel, Berry neither answered directly nor asserted a desire to represent himself. He thereafter indicated he wished to "push forward with pro per," stating it would not be "rocket science."

At that point, the court responded that it would be willing to grant the self-representation request, but advised Berry that it did not think he was prepared for the preliminary hearing. The court did not address Berry's belief that it would not be "rocket science" to represent himself with any specific information about what Berry would need to do, though it told Berry that he might regret his decision. The court confirmed he had no prior experience representing himself, but it again did not explain the difficulties of doing so against a trained lawyer. The court did not meaningfully inquire into whether Berry understood all the challenges he faced, and it made no strong statement about the inadvisability of self-representation.

Similarly scant and generalized oral advisements have been held insufficient to demonstrate a defendant's actual knowledge of the consequences—even when paired with a sufficient written advisement.  For instance, in *People v. Ruffin* (2017) 12 Cal.App.5th 536, 545 (*Ruffin*), the Court of Appeal concluded a defendant did not make a knowing and intelligent waiver in part because the "court's oral comments advised appellant, in substance, that it was unwise for him to represent himself . . . .  But the court did not give any other oral advisements." (*Id*. at p. 546.)  *Ruffin* also rejected the notion that signing a waiver form containing the suggested advisements cured the defects in the court's oral advisements.  In that case, as in this one, "[t]he court did not affirmatively ascertain on the record whether appellant actually read and understood the advisements contained in the waiver form, and whether, with such understanding, appellant wished to waive his right to counsel and represent himself." (*Ibid*.)  Therefore, as in *Ruffin*, we conclude that "[r]eviewing this record de novo and as a whole, we cannot say that the waiver form, coupled with the court's oral inquiry, satisfactorily demonstrates that appellant's request to represent himself was knowing and voluntary." (*Ibid.*)

The People distinguish *Ruffin* on the ground that the defendant's waiver in that case was equivocal as well as poorly informed.  The defendant there told the court he did not actually want to represent himself but felt obligated to.  (*Ruffin*, *supra*, 12 Cal.App.5th at p. 542.)  Also, the defendant in *Ruffin* did not properly fill out his written waiver, providing some evidence that he did not read and/or understand the form, and that he did not understand the charges against him.  (*Id*. at pp. 546-547.)

9

In our view, these differences arguably show that this is a closer case than *Ruffin*, but they do not undermine the bottom-line conclusion that Berry was insufficiently advised. Here, as in *Ruffin*, the court failed to adequately advise the defendant of the consequences of self-representation except to generally suggest it was not advisable. Here, as in *Ruffin*, the court failed to meaningfully inquire into the defendant's subjective understanding of those consequences. And here, as in *Ruffin*, the court did not confirm the defendant had read and understood the advisements in the written waiver. Moreover, at the hearing here, the defendant did not immediately seek self-representation and instead the court explored appointing conflict counsel—without ever returning to the warnings or advisements in the pre-hearing written waiver form. The factors *Ruffin* turned on lead us to the same conclusion as in that case.

The People also cite *Blair* for the proposition that written advisements can suffice to establish knowing and intelligent waiver where there is no reason to believe the defendant misunderstood those written advisements. *Blair* is distinguishable. In that case "the record [was] replete with instances in which defendant was warned of the dangers and disadvantages of self-representation, both orally and in writing, in both the municipal and superior courts. For example, defendant was orally warned that representing himself was unwise, that the prosecutor was an experienced lawyer who would have an advantage over him, that as an in propria persona defendant he would receive no special consideration from the court, that he would be unable to claim ineffective assistance of counsel on appeal, that as his own attorney it would be difficult

10

to be objective, and that a death penalty case involved special risks." (*Id.* at p. 708.) The court concluded, "[t]hese oral advisements sufficed to apprise defendant of the dangers and disadvantages of self-representation." (*Ibid.*) In addition to those oral advisements—which were sufficient on their own—the defendant was also advised in writing "that he would have to handle pretrial, trial, and many posttrial matters himself without the assistance of an attorney, and that he would have to comply with all substantive and procedural rules." (*Ibid.*) The court held that under these circumstances the fact "these latter warnings and understanding were expressed only in writing makes no difference," and that the failure to also offer this advice orally "does not necessarily invalidate defendant's waiver, particularly when, as here, we have no indication that defendant failed to understand what he was reading and signing." (*Id.* at p. 709.) Moreover, the defendant in *Blair* "demonstrated considerable legal knowledge, and had represented himself at his previous trial on the attempted murder charges involving the same underlying events." (*Ibid.*)

The circumstances here are different from those in *Blair*. Berry was not orally advised of any of the risks of self-representation, except for a general warning that he might regret his decision. Instead, the only specific, substantive warnings he received were in the *Faretta* waiver. Berry had never represented himself before, unlike the defendant in *Blair*. He did not otherwise demonstrate any meaningful proficiency with or understanding of the relevant substantive or procedural law—again, unlike the defendant in *Blair*. The closest Berry came to expressing any level of legal knowledge was

11

explaining his belief that his case was not "rocket science" and that subpoenaed phone records would establish a defense. But his belief that his case was simple, his understanding that subpoenas are used to obtain third party records, and his belief that these records would exonerate him, are not enough to establish that he understood the challenges he would face or the consequences of proceeding without a lawyer.

Therefore, after reviewing the entire record, we conclude Berry's waiver of his right to counsel was not knowing and intelligent. Though there is no hard-and-fast rule about what a court must do to establish a defendant's waiver is knowing and intelligent, the minimal and generalized oral advisements in this case, even when coupled with detailed pre-hearing written advisements, were insufficient to show Berry understood the consequences of his decision. Important to creating doubt that Berry absorbed the earlier written advisements is that at the hearing Berry initially focused on firing his lawyer rather than representing himself, and his attorney said that was Berry's interest.

### B. Prejudice

Having concluded the trial court erred in granting Berry's request to represent himself without first adequately advising Berry in a way that ensured the request was knowing and intelligent, we must determine whether this error was prejudicial.

Some errors related to *Faretta* are structural errors that warrant automatic reversal. The erroneous denial of a timely, unequivocal request for self-representation is per se reversible. (*Welch*, *supra*, 20 Cal.4th at p. 729.) So is granting a *Faretta* waiver where there is a judicial finding that the defendant is not competent to make such a waiver.

12

(*Waldron*, *supra*, 14 Cal.5th at p. 309.)  But these cases do not mean that any error relating to the granting or denying self-representation is a structural error that is automatically reversible.  (See *Weaver v. Massachusetts* (2017) 582 U.S. 286, 295-296 [structural errors relate to the framework of the trial and tend to protect an interest other than erroneous conviction where the effects of the error are hard to measure].)

Where a court's *Faretta* advisement is "inadequate," *People v. Bush* (2017) 7 Cal.App.5th 457, 475-477 (*Bush*) held that a harmless error standard was appropriate. *Bush* agreed with the reasoning in *People v. Cervantes* (1978) 87 Cal.App.3d 281, 292-293 (*Cervantes*) in holding that the situation of inadequate *Faretta* warnings differs from a per se reversal situation where a defendant is not advised of his right to counsel and does not waive his right at all.  (*Bush*, at pp. 476-477.)  The view from *Bush* and *Cervantes* that harmless error applies to inadequate *Faretta* warnings has been the prevailing view of California courts for more than two decades.  (See *People v. Sohrab* (1997) 59 Cal.App.4th 89, 99 [noting that as of 1997 "the majority of California courts have concluded," that error in granting a voluntary *Faretta* waiver "is subject to harmless error analysis"], disapproved on other grounds in *People v. Crayton* (2002) 28 Cal.4th 346, 366, fn. 10.)

At least one case has recognized a "split" in the caselaw whether a failure to warn "of the dangers and disadvantages of self-representation as required by *Faretta* when the waiver is taken," with some courts finding the error per se reversible.  (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 551, fn. 10.)  But the two California cases identified as

13

requiring per se reversal do not provide reasoned analysis applicable to a situation of a voluntary *Faretta* waiver taken with inadequate warnings.

The first, *People v. Hall* (1990) 218 Cal.App.3d 1102, held that per se reversal is required where "there is a complete absence of a waiver of the right to counsel and of any self-representation warnings." (*Id.* at pp. 1108-1109.) That is not the situation we have of a waiver taken but with inadequate warnings.

The second, *Lopez, supra,* 71 Cal.App.3d 568, is much more applicable. *Lopez* did involve an inadequate warning, and it did conclude this was per se reversible. Thus, this 46-year-old case appears to be the only one squarely on the other side of a split with cases like *Bush* and *Cervantes*. But *Lopez*'s analysis of the prejudice standard was a single sentence that cited to a case in which a court denied a juvenile defendant the right to have his counsel present argument at all. (*Lopez*, at p. 571, citing *In re William F.* (1974) 11 Cal.3d 249.) This is not persuasive reasoning as to why our situation would likewise require per se reversal.[3]

We are persuaded by *Bush* and *Cervantes* that the harmless error standard applies here. Specifically, we agree with *Cervantes*'s reasoning "that some standard of review short of an automatic reversal should be applied in order to inject more fairness into a defendant's game of 'waive the lawyer.' The effect of a reversal per se rule under circumstances where defendant may otherwise have a lost cause is not compatible with maintaining an efficient and economical system." (*Cervantes*,

---

[3] *Lopez* is from this division, but we do not appear to have relied on it during the past 46 years and do not do so now.

*supra*, 87 Cal.App.3d at p. 293.) Moreover, as *Bush* points out, the denial of a request for self-representation is already per se reversible, and "if an erroneous denial of a self-representation request—where the issue of the defendant's knowledge or understanding is a close question—is reversible per se, and if the erroneous granting of such a request—where the admonition is incomplete rather than completely absent—is also reversible per se, the trial court is left with the narrowest of channels along which to navigate the shoals of possible error." (*Bush*, *supra*, 7 Cal.App.5th at p. 476, italics omitted.) In addition, a per se reversal rule " 'could produce some strange results. For example, suppose that a defendant does not validly waive counsel at sentencing but is given the mandatory minimum sentence prescribed by statute. . . . In this case, must the sentence to be vacated and the case remanded so that the very same sentence can be imposed with counsel present?' " (*Id.* at p. 476.) In our view, the general rule that a defendant is entitled to a fair trial, not a perfect one, applies here. (See *People v. Cunningham* (2001) 25 Cal.4th 926, 1009.)

Under the harmless error standard as set forth under *Chapman v. California* (1967) 386 U.S. 18, 22-24 (*Chapman*), " '[t]he question is whether, "on the whole record . . . the error . . . [is] harmless beyond a reasonable doubt." ' " (*People v. Wilder* (1995) 35 Cal.App.4th 489, 496.) In other words the " 'test is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' " (*Id.* at p. 502.)

15

Here, we cannot say that the failure to advise Berry was harmless beyond a reasonable doubt. Instead, we conclude it is reasonably plausible that additional, pointed advisements might have persuaded Berry to have a lawyer appointed, and that had he been represented the outcome of his case might have been different.

First, though Berry ultimately clearly stated that he wanted to represent himself, he initially was receptive to switching to a panel counsel ("let's do it") instead of his public defender, whose view was that Berry wanted not to be represented by him but did not want to represent himself. He thus did not appear to come into the hearing with self-representation as his paramount aim. When told about the procedure for switching to panel counsel, Berry seemed concerned about speed rather than desiring to represent himself for some other reason, responding "I've been down two weeks already, and . . . I've waived no time."

It was only after the court refused to hear Berry's request for a bail reduction that Berry insisted he wanted to represent himself rather than have another attorney appointed. Even then, Berry tied his self-representation request to saving time, stating "I would like to not waive any time and push forward with pro per." Throughout the colloquy with the court, Berry kept returning to the fact that he had not and would not waive any time, including insisting that the court not continue the imminent preliminary hearing. When asked whether he would be ready for that hearing, Berry did not respond that he felt he was competent and prepared to represent himself, instead saying "I'm ready to push forward on my right to a speedy trial." The only time Berry rejected the

16

idea of having appointed counsel was at the end of the colloquy, when he told the court that it could appoint counsel if it wished, but that he would then seek to represent himself again.

Thus, it appears that though Berry ultimately clearly stated he wanted to represent himself, this desire was solidified during the hearing rather than unequivocal before it. The record suggests Berry's primary motivation was not an independent desire to represent himself, but that he believed representing himself would get him out of custody faster. Moreover, Berry expressed multiple mistaken beliefs about the process—including the belief that the public defender had a conflict of interest when none existed—which led him to seek to represent himself. In this situation, it is plausible that pointed warnings to Berry could have affected his decision. For instance, advising Berry that representing himself at the preliminary hearing meant he was risking even more pre-trial detention, and that self-representation was not generally a way to get his case done quickly, might have convinced him to take the offered lawyer. Also, specifically and directly confronting his mistaken belief that trying a case as a non-lawyer was not "rocket science" might have affected his decision.

Second, the fact Berry's first trial ended in a hung jury is persuasive evidence that the outcome of his case was in doubt, and therefore representation might have changed it. We cannot know whether an attorney would have been able to turn the hung jury into an acquittal, but the hung jury indicates that the case was not overwhelming. That fact sows enough doubt that we cannot say the deprivation of counsel was harmless. We do not

17

have the trial record, and we acknowledge that, in that vacuum, the hung jury could be read to mean the exact opposite: that in fact counsel was unlikely to change anything because Berry was such an effective advocate for himself that he achieved a hung jury *despite* strong evidence. But we need not decide which of these alternatives is true, or even most compelling. Under *Chapman*, it is enough that a plausible alternative to conviction exists absent the error to make it reasonably doubtful the error was harmless.

Thus, the trial court erred by inadequately advising Berry of the dangers of self-representation before granting his *Faretta* waiver, and we cannot say this error was harmless beyond a reasonable doubt. Accordingly, we reverse the judgment.

DISPOSITION

We reverse the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____<br>J.

We concur:

CODRINGTON _____
        Acting P. J.

FIELDS _____
        J.