[No. B103392. Second Dist., Div. Seven. Nov. 19, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL NORIEGA, Defendant and Appellant.

## COUNSEL

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Gustavo Gomez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

JOHNSON, J.—A jury found appellant, Daniel Noriega, guilty of one count of shooting at an occupied vehicle. (Pen. Code, § 246.) He claims the trial court committed reversible error by granting his request to represent himself without adequate warnings as required by *Faretta* v. *California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562]. In addition, he claims the trial court committed reversible error by relieving standby counsel in the absence of due process, and in denying his request for a continuance to prepare for trial. We conclude the court's failure to properly advise appellant of the risks and dangers of self-representation resulted in prejudicial error. We therefore reverse on this ground alone.

### FACTS AND PROCEEDINGS BELOW

On February 2, 1996, Loretta Granados sat at her kitchen table near a large window facing the street. She saw her niece, Naomi Vega, drive up in her van and pull into the driveway. Two older boys ran out of the van. Vega exited carrying a sleeping five-year-old boy.

After Vega put the boy in a bed in Granados's home, Granados asked Vega where she left the baby. Vega replied the baby was still asleep in the car and that she was going to get him.

Granados then saw appellant's car pull up on the wrong side of the street, with the driver's side closest to the back of Vega's van. Appellant was alone and Granados could see his face. Appellant looked to each side, pulled out a gun and shot once at Vega's van.

Granados yelled at her niece to get the baby. She and Vega went to the van. By that time appellant was driving away.

Diane Calderas lives in an apartment across the street from where the shooting took place. Just before the shooting, Calderas was near the bottom of the ground floor stairwell when she saw appellant's car pull up on the wrong side of the street close to Vega's van.

As she turned her back to unlock a garage door, Calderas heard a "ping" sound. She turned around and saw appellant's gray car parked and then saw it drive away. She noticed appellant's car's license plate number started with 2LTR and included the numeral 3.

Calderas crossed the street to see what caused the noise. She observed the rear window of Vega's van was shattered and had a bullet hole in it. She told Granados and Vega the man in the gray car shot at Vega's van.

Calderas did not actually see appellant the night of the shooting but had seen appellant drive this car on previous occasions. Calderas did not see the gun used in the shooting.

Los Angeles Police Officer Mario Gonzales inspected the van. He observed the rear window was shattered and had what appeared to be a small bullet hole. The officer did not find either a bullet or shell casing in or around Vega's van.

A few days later police arrested appellant. He was driving a gray car with the license plate No. 2LTR732.

Appellant presented an alibi defense at trial. Diane Fuentes, appellant's "common law wife," testified appellant was a diabetic. In late January appellant ran out of insulin and was unable to afford more for four days. During this four-day period appellant was dizzy and weak. His legs were cramping and he stayed at home to rest.

Fuentes also testified appellant never drove at night. She claimed because appellant was home sick and never drives at night, he could not have possibly been the person who shot at Vega's van on February 2, 1996.

The jury convicted appellant of the single count of shooting at an occupied vehicle (Pen. Code, § 246). Appellant received a midterm sentence of five years in state prison.

Appellant appeals from the judgment of conviction.

DISCUSSION

*The Trial Court's Failure to Give Adequate Warnings of the*
*Dangers of Self-representation as Required by Faretta Requires*
*Reversal of the Judgment.*

Deputy Public Defender Mr. Michael Sklar represented appellant at his arraignment and throughout pretrial proceedings before Judge Nancy Brown.[1] On April 25, 1996, the court granted the defense request for additional discovery from the People. Also at this hearing, the court denied a defense request to set aside the information for insufficiency of the evidence (Pen. Code, § 995) and denied a defense request to reduce the offense to a misdemeanor in exchange for a guilty plea (Pen. Code, § 17,

---

[1] We granted appellant's request to take judicial notice of the superior court file in this case. (Evid. Code, §§ 452, subd. (d), 459.)

subd. (b)). Appellant rejected counsel's suggestion the matter be delayed to seek appellate review of the trial court's denial of his motion to set aside the information.

The court granted defense counsel's request for a continuance because he was still engaged in trial on another matter in Judge Brown's courtroom. The parties estimated trial of appellant's case would require three to four court days.

At the pretrial conference on May 13, 1996, the court determined the defense had received all available discovery in the case. The defense had requested physical and documentary evidence, such as "ballistics results, shell casings, tests done on the vehicle window, photographs, or reports made of investigations . . . ." but none of this evidence had been secured from the scene or prepared by the investigators. The prosecutor acknowledged the investigators conducted an inadequate and sloppy investigation.

Defense counsel then stated: "With that said, your Honor, inasmuch as nothing exists, your Honor can't order what doesn't exist. [¶] There are—defense has three witnesses that have already been reserved by the court, ordered on call.

"Mr. Noriega is present in court. In light of the fact that I'm going out on the Davis matter, as I informed your Honor, I believe Mr. Noriega is, upon representations to me, wishes to go pro per so he can start right away. [¶] I served your Honor and the District Attorney with a notice of that, of his intention to proceed in pro per for today's date. He is present in court.[2]

"If he still wishes to do so—I believe his last day—and he's entitled to start today. [¶] If your Honor wishes to inquire, to see if that is what he intends to do."

The court then inquired whether appellant in fact wanted to represent himself because defense counsel was currently engaged on another matter.

"THE COURT: Mr. Noriega, is it your desire, since Mr. Sklar cannot take you to trial today because of the Davis case, to represent yourself, Sir?

---

[2]Five days earlier, on May 8, 1996, defense counsel filed a formal notice with the court to inform the court and counsel:

"DEFENDANT Daniel Noriega WILL MOVE to proceed in pro-per on the date set for trial of May 13, 1996. The defendant intends to announce ready on that date and inasmuch as that date is the last day for trial pursuant to the defendant['s] constitutional and statutory rights to a speedy trial, this document is intended to give notice to all parties of such intent so as not to cause surprise."

"THE DEFENDANT: Yes.

"THE COURT: All right. [¶] And have you ever represented yourself before?

"THE DEFENDANT: Yes.

"THE COURT: When?

"THE DEFENDANT: In traffic court.

"THE COURT: Okay. [¶] How long ago?

"THE DEFENDANT: I think it was about couple years ago maybe.

"THE COURT: Okay. [¶] How did you do?

"THE DEFENDANT: Case dismissed.

"THE COURT: Well, that bodes well. [¶] Now, then, do you know how to read—

"THE DEFENDANT: Yes.

"THE COURT: —and write?

"THE DEFENDANT: Yes.

"THE COURT: Okay. [¶] And add, subtract, multiply, and divide?

"THE DEFENDANT: Yes.

"THE COURT: And do you understand that you have a right to be represented by counsel, a constitutional right to be represented by counsel?

"THE DEFENDANT: Yes.

"THE COURT: And that, in order for you to go pro per, you have to knowingly, intelligently, understandingly, and voluntarily give up that right?

"THE DEFENDANT: Yes.

"THE COURT: All right. [¶] Is that what you want to do?

"THE DEFENDANT: Yes.

"THE COURT: All right. [¶] Now, then, what the court to [*sic*] going to do is find you do understand your constitutional rights to be represented by counsel; and that you knowingly, intelligently, and understandingly and voluntarily give up that right. [¶] And, Mr. Noriega, you are now representing yourself. [¶] I'll send this case to Department 100 forthwith. And I'm going to appoint standby counsel to represent you. . . ."

Appellant then moved to have the case dismissed, claiming the 60-day time limit had expired. (Pen. Code, § 1382.)[3] The court denied the motion and explained the 60 days had not yet expired but that today was the last day to bring the case to trial.

On defense counsel's written notice of appellant's intention to proceed in propria persona Judge Brown made a notation "Ct will appt standby counsel." However, the court did not make appointment of standby counsel part of the court's minutes.

Appellant received defense counsel's file and all available discovery in the matter before being transferred to department 100. In Judge Brown's transfer memo she noted appellant had been granted in propria persona status at 9:45 a.m. and noted the case had been trailing in her courtroom because appellant's defense counsel had been engaged in trial. Judge Brown also noted appellant "is playing with the system. I have app'ted Marvin Part to be [appellant's] standby counsel, jury trial must commence today."

In department 100 appellant apparently announced he was ready for trial and confirmed he would be representing himself. Apparently, appellant did not mention appointment of standby counsel. Judge Bascue did not provide appellant with standby counsel and, if appointed by Judge Brown, appellant did not in fact have standby counsel available during his trial. Judge Bascue sent appellant to Judge Smith's courtroom for trial after the noon recess.

■ A defendant has a federal constitutional right to counsel at all critical stages in a criminal proceeding where substantial rights of an accused may be affected. (*Mempa* v. *Rhay* (1967) 389 U.S. 128, 134 [88 S.Ct. 254, 256-257, 19 L.Ed.2d 336].) The right to counsel may be waived by a defendant who wishes to represent himself or herself at trial. (*Faretta* v. *California, supra*, 422 U.S. at p. 807 [95 S.Ct. at p. 2527].) By such waiver a defendant relinquishes "many of the traditional benefits associated with the

---

[3]Penal Code section 1382 provides in pertinent part: "(a) The court, unless good cause to the contrary is shown, shall order the action to be dismissed . . . [¶] . . . [¶] (2) When a defendant is not brought to trial in a superior court within 60 days after the . . . filing of the information . . . ."

right to counsel." (*Id.* at p. 835 [95 S.Ct. at p. 2541].) For this reason a knowing and intelligent waiver of the right to counsel is required before a criminal defendant is permitted to represent himself or herself. (*Ibid.*)

"A defendant seeking self-representation 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." ' (*Faretta, supra,* 422 U.S. at p. 835 [45 L.Ed.2d at p. 582].) The test of a valid waiver of counsel is not whether specific warnings or advisements were given but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case. [Citations.]" (*People* v. *Bloom* (1989) 48 Cal.3d 1194, 1224-1225 [259 Cal.Rptr. 669, 774 P.2d 698]; see also *People* v. *Jones* (1991) 53 Cal.3d 1115, 1142 [282 Cal.Rptr. 465, 811 P.2d 757]; *People* v. *Pinholster* (1992) 1 Cal.4th 865, 928-929 [4 Cal.Rptr.2d 765, 824 P.2d 571].)

"In addition to determining that a defendant who seeks to . . . waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary. [Citations.]" (*Godinez* v. *Moran* (1993) 509 U.S. 389, 400 [113 S.Ct. 2680, 2687, 125 L.Ed.2d 321].) "The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced. . . ." (*Godinez* v. *Moran, supra,* 509 U.S. at p. 401, fn. 12 [113 S.Ct. at p. 2687], italics in original.)

█ Appellant contends the trial court committed reversible error because it failed to advise him of the potential dangers of selfrepresentation. █ A defendant may challenge the grant of a motion for self-representation on the basis the record fails to show the defendant was made aware of the risks of self-representation. (*People* v. *Bloom, supra,* 48 Cal.3d 1194, 1224.)

█ From the quoted exchange it is clear the trial court gave no specific warnings or advisements regarding the risks and dangers of self-representation. The court did not inquire whether appellant understood the charges against him and the potential penal consequences if he lost at trial. The court did not warn him the trial court would treat him like any other attorney and that he could expect no special treatment or advice from the court during his trial. The court did not point out appellant's lack of legal skills and the fact his opponent at trial would be both experienced and prepared. The court did not advise appellant he had no right to either standby, advisory or cocounsel

in the event he decided to represent himself. (*People* v. *Bloom, supra*, 48 Cal.3d 1194, 1218; *People* v. *Jones, supra*, 53 Cal.3d 1115, 1142.) In short, the trial court did not give any necessary warnings to assure itself appellant was making an informed and intelligent decision to represent himself despite the disadvantages and risks of that choice.

Instead, the court's questions were directed at appellant's ability to understand and appreciate his constitutional right to counsel, and at his competency to waive that right. ▇▇ ▇ ▇ The court did not explain appellant's equally significant and competing right to a speedy trial and the advantages and disadvantages of choosing one right over the other.[4] ▇ Such admonitions would have been particularly appropriate in a case

---

[4]This case demonstrates the tension between a defendant's sometimes competing statutory right to a speedy trial and constitutional right to representation by adequately prepared and competent counsel. (*Townsend* v. *Superior Court* (1975) 15 Cal.3d 774, 782 [126 Cal.Rptr. 251, 543 P.2d 619]; see also, *People* v. *Floyd* (1970) 1 Cal.3d 694, 706-707 [83 Cal.Rptr. 608, 464 P.2d 64].) In *Townsend* the Supreme Court held a defendant's statutory right to be tried within 60 days is not deemed so fundamental—as contrasted with a defendant's constitutional right to a speedy trial—that counsel may not give the consent necessary to waive time under Penal Code section 1382 in order to prepare for trial. However, the court emphasized the power of appointed counsel to control judicial strategy and to waive a defendant's nonfundamental rights—despite the defendant's objection—presumes effective counsel acting for the best interest of the client. (*Townsend* v. *Superior Court, supra*, 15 Cal.3d at p. 781.)

Nevertheless, if appointed counsel consents to a postponement of trial beyond the statutory period solely to resolve a calendar conflict, that does not promote the best interests of the defendant, and counsel's consent is invalid unless supported by the express or implied consent of the defendant. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 566 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) When this situation arises, in order to protect the defendant's right to a speedy trial the court should first inquire whether assigned counsel could be replaced with alternative counsel who would be able to bring the case to trial within the statutory period. If this is not possible, the court will have no alternative but to grant a continuance. However, if the defendant does not consent to trial beyond the statutory period, and the court finds the delay is attributable to the fault or neglect of the state, he or she is entitled to dismissal under Penal Code section 1382. (26 Cal.3d at pp. 572-573.) The Supreme Court in *Johnson* held "when a client expressly objects to waiver of his right to a speedy trial under section 1382, counsel may not waive that right to resolve a calendar conflict when counsel acts not for the benefit of the client before the court but to accommodate counsel's other clients." (26 Cal.3d at pp. 561-562.) In the case of an incarcerated defendant "the asserted inability of the public defender to try such a defendant's case within the statutory period because of conflicting obligations to other clients does not constitute good cause to avoid dismissal of the charges." (*Ibid.*)

In this case appellant was incarcerated. On the last day to bring the case to trial within the statutory period, he expressly refused to waive further time for trial. The deputy public defender was unable to immediately proceed on appellant's case because of other clients' pending trials. Had appellant's case been delayed one more day, and assuming replacement counsel could not adequately prepare within the few hours remaining in the statutory period, he would have been entitled to dismissal upon request under Penal Code section 1382 if the court found the delay attributable to the fault or neglect of the state. Under these circumstances it was especially important the trial court assure itself appellant was fully informed of all the possible ramifications of his situation so he could have made an informed and

such as this where the trial court expressed concern appellant was "playing with the system." If the trial court believed appellant was less than sincere about wanting to represent himself at trial, then it was incumbent on the court to probe appellant's true motives, impress on him the seriousness and consequences of his decision and, if he persisted in wanting to represent himself, to make an adequate record demonstrating appellant's decision was one by which he could be legally bound as in fact voluntarily, knowingly and intelligently made. (See, e.g., *People* v. *Lopez* (1977) 71 Cal.App.3d 568, 572-574 [138 Cal.Rptr. 36] [suggesting defendants be alerted to the possibility inadequacy of representation at trial cannot be later raised as an issue on appeal].)

In this case the court not only failed to warn appellant about the risks of self-representation but seemed to encourage him to take that course. At one point the court even reassured appellant his prior experience defending a traffic ticket "bodes well" for his self-representation in this felony prosecution. Such comments were likely to further mislead appellant about the true consequences of a waiver of the right to counsel and thus cast further doubt the waiver was knowingly and intelligently made.

Contrary to the People's suggestion, we agree with appellant that Judge Smith's warnings, discussions of the disadvantages of self-representation, and discussions of possible punishment *during trial* came too late to substitute for proper and adequate warnings prior to granting appellant's motion for self-representation. From Judge Brown's admonitions prior to granting the motion it is impossible to find the court made appellant aware of the dangers and disadvantages of self-representation or that he elected to represent himself "with open eyes." We are thus compelled on this record to conclude the trial court's inadequate warnings constituted error. (Cf. *People* v. *Hall* (1990) 218 Cal.App.3d 1102, 1106 [267 Cal.Rptr. 494] [in the face of a silent record the court had no choice but to find error].)

The parties agree the critical question is whether the error is harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]; *People* v. *McArthur* (1992) 11 Cal.App.4th 619, 628-630 [14 Cal.Rptr.2d 203]; *People* v. *Wilder* (1995) 35 Cal.App.4th 489, 496-505 [41 Cal.Rptr.2d 463].) The United States Supreme Court in *Rose* v. *Clark* (1986) 478 U.S. 570, 583 [106 S.Ct. 3101, 3109, 92 L.Ed.2d 460] described the *Chapman* harmless error test as follows:

intelligent decision whether he should proceed to trial on his own as he claimed he wanted to do, or consent to waive further time in order to be represented by prepared and competent counsel. (*People* v. *Abdel-Malak* (1986) 186 Cal.App.3d 359, 368 [233 Cal.Rptr. 115] [trial court properly allowed the defendant, rather than defense counsel, who, although prepared, requested a continuance, to choose whether the trial should proceed].)

" '*Chapman* mandates consideration of the entire record prior to reversing a conviction for constitutional errors that may be harmless.' [Citation.] The question is whether, 'on the whole record . . . the error . . . [is] harmless beyond a reasonable doubt.' [Citation.]"

In this case it is difficult, if not impossible, to determine whether appellant would have decided in favor of professional representation had he been fully informed of the dangers and risks of his decision to proceed in propria persona. On the one hand appellant expressed his desire to enforce his right to a speedy trial. However, when he realized the difficulties of actually representing himself in a jury trial appellant was willing to waive that right in order to properly prepare. Consequently, we are unable to declare a belief the error was harmless in this case.

Judge Smith warned appellant how difficult it was going to be to act as his own lawyer at trial. The next morning before voir dire continued appellant requested a 10-day continuance to prepare his case. He stated: "I would like to have a 10-day continuance so I can prepare my case because I don't have no discovery." Judge Smith told appellant he had already received all the information the People had available and denied appellant's request for a continuance.

In the proceedings which followed Judge Smith did what he could to explain the process to appellant and explain the obstacles he was up against. Following completion of jury selection and just before opening statements appellant reminded Judge Smith standby counsel had been appointed to assist him at trial. Appellant told Judge Smith, "You said you were going to appoint me co-counsel and I would like to proceed with a co-counsel." Judge Smith informed appellant he would have to try his case on his own. The court explained: "I can't give you a co-counsel. He won't be prepared. Something was said about standby counsel, but I don't know who would be ready to go at this time, so your timing is not good. You will probably have to proceed in pro per. Who did you talk to about that? . . . [¶] Advisory counsel is different. Let me see what it says. It is not easy representing yourself. I know it's tough. We've already heard the motions, so we don't rehear motions. . . ."

Given appellant's change of heart about wanting to enforce his right to a speedy trial and acknowledgment of his need for professional assistance once apprised of the difficulties of actually representing himself at trial, we are unable to state a belief the court's error in failing to warn appellant of the risks and disadvantages of self-representation was harmless beyond a reasonable doubt. (*Chapman* v. *California, supra,* 386 U.S. 18; *People* v. *McArthur, supra,* 11 Cal.App.4th 619, 628-630; *People* v. *Wilder, supra,* 35 Cal.App.4th 489, 496-505.)

DISPOSITION

The judgment is reversed.

Lillie, P. J., concurred.

**WOODS, J.,** Concurring.—I agree with my colleagues the judgment must be reversed because of *Faretta* (*Faretta* v. *California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562]) error that cannot be deemed harmless under *Chapman* (*Chapman* v. *California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]). I write separately to suggest a way to minimize recurring *Faretta* appeals and appellate *Faretta* inconsistency.

The starting point is *Faretta*: "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " (*Faretta* v. *California, supra*, 422 U.S. at p. 835 [95 S.Ct. at p. 2541].)

*Faretta* did not specify what dangers and what disadvantages the defendant *should* (not must) be made aware of. Our California Supreme Court has been similarly unspecific. For example, *People* v. *Bloom*, after quoting the above *Faretta* language, states: "The test of a valid waiver of counsel is not whether specific warnings or advisements were given but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case." (*People* v. *Bloom* (1989) 48 Cal.3d 1194, 1225 [259 Cal.Rptr. 669, 774 P.2d 698].) To like effect are *People* v. *Pinholster* (1992) 1 Cal.4th 865, 928-929 [4 Cal.Rptr.2d 765, 824 P.2d 571] ("As long as the record as a whole shows that the defendant understood the dangers of self-representation, no particular form of warning is required. 'The test of a valid waiver of counsel is not whether specific warnings or advisements were given but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case.' ") and *People* v. *Stansbury* (1993) 4 Cal.4th 1017, 1048 [17 Cal.Rptr.2d 174, 846 P.2d 756] ("No particular form of words is required in admonishing a defendant who seeks to forego the right to counsel and to represent himself.").

If, as our California Supreme Court has consistently said, no particular form of words is required and the test is *not* whether specific warnings or advisements were given then how are the trial courts to know what they should (must?) advise a prospective in propria persona defendant and how are the appellate courts to determine from the record as a whole whether a defendant's self-representation choice was intelligent?

From my perusal of the cases the answer is the trial courts *do not* know what to advise defendants and appellate courts reach irreconcilable results in their "whole record" assessments.

The instant case is illustrative. An exceptionally experienced judge (Superior Court Judge Nancy Brown) only ascertained appellant could read and write, and understood his right to counsel. Nothing was said about dangers and disadvantages. My colleagues reverse because the trial court did not, among other things, advise appellant of the penal consequences of the charged offense. *People* v. *Harbolt* (1988) 206 Cal.App.3d 140, 149 [253 Cal.Rptr. 390] holds such an advisement is unnecessary.

My colleagues state "it is difficult, if not impossible, to determine whether appellant would [have chosen self-representation] had he been fully informed of . . . dangers and risks." (Maj. opn., *ante*, at p. 322.) I agree. Yet our Division Five colleagues, on indistinguishable facts, abruptly reach an opposite conclusion. (*People* v. *Wilder* (1995) 35 Cal.App.4th 489, 502 [41 Cal.Rptr.2d 463] ["As noted previously, defendant did not desire to be represented by the counsel that was offered. A recitation of the dangers and disadvantages of self-representation would have led to the same result; he would have voluntarily proceeded in pro se. The trial would have still occurred with defendant representing himself. Nothing would have changed had defendant been advised of the dangers of self-representation."].)

Such appellate pronouncements (a recitation of dangers and disadvantages makes no difference) do not encourage time-pressed trial courts to conduct meaningful advisements.

There are other appellate discouragements. Some cases incorrectly (I believe) hold "[t]he burden is on the defendant to demonstrate he did not knowingly and intelligently waive his right to counsel." (*People* v. *McArthur* (1992) 11 Cal.App.4th 619, 627 [14 Cal.Rptr.2d 203]; *People* v. *Harbolt*, *supra*, 206 Cal.App.3d 140, 149; *People* v. *Barlow* (1980) 103 Cal.App.3d 351, 370-371 [163 Cal.Rptr. 664].) Other cases incorrectly (I believe) hold defendant's competence to waive counsel is a determination within the trial court's discretion which, absent manifest abuse, cannot be disturbed on appeal. (*People* v. *Salas* (1978) 77 Cal.App.3d 600, 605 [143 Cal.Rptr. 755]; *People* v. *McArthur*, *supra*, 11 Cal.App.4th 619, 627.)

So long as we instruct trial courts "no particular form of warning is required," trial courts will give no particular form of warning. The result will continue to be improvised, erratic, and dissimilar advisements pregnant with arguable claims of *Faretta* error.

It need not be so. When our Supreme Court addressed a similar issue, how to ensure that a guilty plea was knowingly and voluntarily made, it specified

the rights a defendant had to be advised of by the trial court. (*In re Tahl* (1969) 1 Cal.3d 122, 132 [81 Cal.Rptr. 577, 460 P.2d 449].) It did not "require the recitation of a formula by rote or the spelling out of every detail" (*ibid.*) but the Supreme Court did identify the critical subjects trial courts were required to address. By doing so, the Supreme Court provided assurance to trial courts that error could be avoided if its guidelines were followed.

I suggest our Supreme Court provide similar guidelines for *Faretta* waivers. Such guidelines need not be "a formula by rote or the spelling out of every detail." Two decades ago Justice Gardner (our judicial Will Rogers, wise and revered) suggested such guidelines. (*People* v. *Lopez* (1977) 71 Cal.App.3d 568, 572-574 [138 Cal.Rptr. 36].) His suggestions have largely been ignored.

Surely a defendant should be told the stakes: the extent of possible punishment. Similarly, a defendant should be advised there are technical rules applicable to every phase of a trial (voir dire, opening statements, direct and cross-examination, introduction of exhibits, jury instructions, motions, and argument). Knowing those rules may mean acquittal; not knowing them may mean conviction. Additionally, a defendant should be advised he or she is responsible for the entire defense: procuring the attendance of defense witnesses, asserting defenses, etc. It might also be useful to explain there are other unanticipated risks and dangers that only a lawyer may be able to identify and cope with and such risks may mean the difference between acquittal and conviction.

Implementation of such guidelines need not be time consuming. They could be incorporated in a form to be signed by the defendant and briefly inquired about by the trial court. Or, even if orally conveyed by the trial court, advisements need take only a few minutes.

Not only would such guidelines reduce *Faretta* appeals and perhaps even induce otherwise inclined defendants to be represented by counsel, but they also would ensure that a defendant, before contributing to his own conviction or causing a trial to become a mockery, was at least notified of self-representation risks and knowingly accepted them.

A petition for a rehearing was denied December 15, 1997, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied March 18, 1998.