[No. S116882. May 7, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL RAY BURGENER, Defendant and Appellant.

### COUNSEL

Michael J. Hersek, State Public Defender, under appointment by the Supreme Court, and Harry Gruber, Deputy State Public Defender, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Annie Fraser and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**BAXTER, J.**—This is the fourth published opinion on appeal arising from defendant Michael Ray Burgener's murder of a convenience store clerk on Halloween morning 1980, and it may not be the last.

In 1981, a jury convicted defendant of the first degree murder of William Arias by use of a firearm, robbery by use of a firearm and with the infliction of great bodily injury, and being a felon in possession of a firearm. The jury also found true the special circumstance that defendant murdered Arias in the commission of the robbery, and sentenced defendant to death. In 1986, we affirmed the guilt judgment but reversed the penalty because defense counsel, at defendant's instruction, had not presented any mitigating evidence or argument at the penalty trial. (*People v. Burgener* (1986) 41 Cal.3d 505 [224 Cal.Rptr. 112, 714 P.2d 1251].)

In 1988, a jury again sentenced defendant to death. However, the trial court granted defendant's application under Penal Code section 190.4, subdivision (e) (section 190.4(e)) to modify the verdict from death to life

imprisonment without the possibility of parole. The Court of Appeal reversed, finding the trial court had considered improper factors in granting the application to modify the death penalty verdict, and remanded with directions for the trial court "to reconsider and rule upon the motion in accordance with the factors listed in Penal Code sections 190.4, subdivision (e), and 190.3 and no others." (*People v. Burgener* (1990) 223 Cal.App.3d 427, 430 [272 Cal.Rptr. 830].)

Because of the retirement of the judge who had presided at the penalty retrial, the case was reassigned. In 1991, the substituted judge, the Honorable Ronald R. Heumann, after reading the entire penalty retrial transcript, denied the application to modify the death penalty verdict. On appeal, we determined that Judge Heumann had failed to exercise his independent judgment in reviewing the application to modify the verdict and, finding no other error, vacated the judgment of death solely to permit the judge to reconsider the automatic application to modify the verdict. Our disposition provided that any subsequent appeal was to be "limited to issues related to the modification application." (*People v. Burgener* (2003) 29 Cal.4th 833, 893 [129 Cal.Rptr.2d 747, 62 P.3d 1].)

This time on remand, Judge Heumann at first denied new defense counsel's motion for a continuance and denied the section 190.4(e) application to modify the verdict. A month later, Judge Heumann vacated his ruling and set a new hearing date. At a subsequent hearing, after another continuance was granted, the court granted defendant's request to represent himself at the resentencing hearing. (See *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] (*Faretta*).) On November 7, 2003, Judge Heumann again denied the section 190.4(e) application and reinstated the judgment of death. This appeal is automatic. (Pen. Code, § 1239, subd. (b).)

We find that the record is insufficient to establish that defendant's waiver of counsel was knowing and intelligent and therefore once again vacate the judgment of death and remand the matter solely for the purpose of conducting a hearing on defendant's automatic application to modify the death penalty verdict.

### BACKGROUND

The facts of the crime are set out in our prior opinion. (*People v. Burgener, supra,* 29 Cal.4th at pp. 847–855.) For purposes of this appeal, it is sufficient to note that defendant shot and killed William Arias, a clerk at a 7-Eleven in Riverside, with five shots from a .22-caliber weapon at close range and

emptied the store's cash register of approximately $50. At the penalty retrial, the People presented evidence that, in 1969, defendant had attempted to rob and kill a clerk at a liquor store located a block and a half away from the 7-Eleven where Arias was murdered. In 1977, just over two months after being released from prison, defendant robbed a pawnshop clerk.[1] The People also presented evidence of defendant's violent conduct against correctional officers and fellow inmates. Defendant presented evidence that he did not kill Arias, that he had not even been present at the scene, and that he had been framed by two of the prosecution witnesses. The defense also offered evidence that he had been abused as a child and suffered from adjustment and personality disorders.

As stated above, the history of the section 190.4(e) automatic application to modify the verdict in this case is a long and unhappy one. Following the penalty retrial, a ruling granting the application *and* a ruling denying the application have each been reversed. In our opinion overturning the denial of defendant's application after retrial, we stated that the record contained no indication that Judge Heumann "understood his duty to independently re-weigh the evidence and make an independent determination whether the evidence supported the verdict of death. Indeed, the court's statements betray reliance on a lesser standard of review. After quoting the relevant portion of the statutory text, the court stated: 'I don't know exactly what that means, but I assume it means to review the aggravating factors listed in [section] 190.3 to determine if the jury could find that the aggravating circumstances outweigh the mitigating factors. [¶] In doing this, I look to see if there was evidence on each of the factors and, if so, could the jury, based upon such evidence, find as they did?' This articulation bears a disturbing resemblance to the deferential substantial-evidence standard. (E.g., *People v. Steele* (2002) 27 Cal.4th 1230, 1249 [120 Cal.Rptr.2d 432, 47 P.3d 225] [whether evidence is reasonable, credible, and of solid value such that the jury ' "could find" ' as they did].)

"Unfortunately, the remainder of the court's comments offers no assurance the court was aware of and exercised its independent judgment. At no point did the court indicate that it had undertaken an independent review of the evidence or balancing of the aggravating and mitigating circumstances. Rather, the court consistently deferred to the jury's implied findings. As to section 190.3, factor (b), for example, the court said, 'The People contend and the jury could have believed that murder, not robbery, was the real motive for the crime.' In discussing factor (k), the court again avoided expressing its own views as to the significance of the two $5 bills found in

---

[1] Less than three months after his release from that prison commitment, he murdered Arias.

the crumpled 7-Eleven paper bag recovered from [a prosecution witness's] apartment: 'This could be interpreted, as the defendant contends, as a clear sign he was set up by his former girlfriend and her former boyfriend to take the fall in this matter or it could be interpreted, as the People contend, [as] a sign that the robbery was not the real motive and that the crime did not exhibit a high degree of intelligence to start with.' The court likewise observed that 'the jurors apparently were not swayed by the testimony about weapons in prison, defendant's early life and juvenile record or the severe paranoia he's alleged to have suffered from' and that the 'jurors also apparently did not accept the defendant's theory of lingering doubt about his conviction.' In summing up, the court said merely that '[t]he jury had sufficient aggravating factors presented to them that I cannot say their verdict, finding the aggravating circumstances . . . outweighed the mitigating circumstances, and, hence, imposing the penalty of death was contrary to law or the evidence presented.' " (*People v. Burgener, supra*, 29 Cal.4th at pp. 891–892.)

At the first hearing on remand under our instructions, new attorneys appeared for both parties. Defense counsel had died and was replaced with Charles Butler. The assigned deputy district attorney was no longer with the office and was replaced with William Mitchell. The court stated that it had reviewed the briefing previously submitted in connection with the section 190.4(e) application as well as the transcript of the 1991 hearing on remand from the Court of Appeal, but had not reread the entire transcript of the penalty retrial "because I didn't feel it was necessary to do so because I still have a remembrance and recollection of the matters and general detail that I looked at." The court added that it had in fact made an independent review at the previous hearing on the section 190.4(e) application but simply had not "used the proper terminology" in doing so and had not made it clear "that my ruling was based upon my own independent review of the matter, and not just simply reviewing as to whether or not the jury could have made the findings that they did." When the district attorney urged the court to proceed with its reconsideration of the application, defense counsel announced that he knew "nothing about the case," had not yet had the opportunity to review the trial or sentencing transcripts, had discovered the case was on calendar only 10 or 15 minutes earlier, and had met defendant only a few minutes earlier— although he acknowledged that the public defender's office had been sent a letter regarding the hearing four weeks earlier. Counsel stated he was not ready and therefore objected to going forward. Defendant, on the other hand, preferred that the court proceed so that he could "get his case out of the California courts, which apparently it's been in for the last 23 years, and get it into federal court."

The court expressed doubt that counsel would be at a disadvantage by immediate reconsideration of the section 190.4(e) application—"I don't know if any additional time would be of any benefit to you. Well, it certainly would be of benefit to you, Mr. Butler, but whether or not it would change anything in this particular matter, I don't know if there's anything else that you would have to add at this time"—and announced that it was "going to proceed at this time with the reconsideration." The court then denied the section 190.4(e) application. The court's statement of reasons included defendant's attempt to escape from the Riverside County jail, but, after defendant and the People both objected that the court could not consider evidence that had not been presented to the jury (see *People v. Burgener, supra,* 29 Cal.4th at p. 873), the court insisted that the escape had not weighed as a factor in its decision and reiterated that "striking that from my consideration does not change my decision that the death verdict is the proper verdict to be rendered in this particular case."

Six weeks later, upon defendant's motion and a concurrent request by the Riverside County District Attorney's Office and the Attorney General, the court vacated its ruling denying the section 190.4(e) application and set a new hearing date. After another continuance, defendant indicated at a status hearing that he wanted to represent himself at sentencing. The court put the matter over for a week. At the subsequent status hearing, the court granted defendant's *Faretta* motion. On November 7, 2003, the court denied the application to modify the verdict and reinstated the judgment of death.

### DISCUSSION

Defendant contends the trial court erred in granting his motion to represent himself without obtaining a knowing and intelligent waiver of his right to the assistance of counsel under the Sixth Amendment. We agree.

### A. *Proceedings Below*

Defendant first indicated that he wanted to represent himself for purposes of sentencing during a status hearing on October 23, 2003, when defense counsel stated his intent to request another continuance. The discussion proceeded as follows:

"THE COURT: All right. Mr. Burgener, you understand that this matter is coming up for sentencing on the 7th of November, and you have been represented by the Public Defender's Office in Riverside County . . . since this matter began back in . . . about 1980. At this point in time, we're coming

up for the sentencing matter. Is it your desire to represent yourself at the time of sentencing?

"THE DEFENDANT: For the purpose of sentencing, yes, and also I'd like to request that you just go ahead and do it today.

"THE COURT: Well, we can't do it today because we have already scheduled it for the 7th. I don't have all the necessary paperwork here to proceed, and I wasn't prepared to proceed on the matter today.

"THE DEFENDANT: Well, my concern is, well not concern, but I think everyone involved in this particular part of the case knows what's going to happen, so I don't feel there's any further delay that's going to change anything, or anything that will be brought to your attention will change anything, so I'd like to just proceed with the sentencing as soon as possible.

"THE COURT: We have a—well, I think I would be remiss if I didn't advise you at least with regard to certain possible pitfalls with regard to self-representation, but this matter has been in and out of the courts and on appeal so long, I'm sure that you're familiar with all of the obligations and—that are concerned in this particular matter, what the consequences are.

"Mr. Butler has been making efforts, and I know he wishes to come in and argue the matter with regard to the penalty phase that the penalty should not be as previously imposed or as recommended by the jury in this case.

"And Mr. Butler, I would assume that you are prepared to proceed along those lines on [November] the 7th, although I . . . understand you want to continue it even further?

"MR. BUTLER: Correct, and we were going to address that on the 31st. That's what Mr. Mitchell [the district attorney] and I talked about.

"THE COURT: I'll tell you what I'll do. I'll put this matter over to the 31st, and take under advisement your request, and we will hear the whole matter on the 31st, as far as continuance, or keeping our date of the 7th of November, and we will just take care of the matters at that point in time."

At the next hearing on October 31, 2003, defendant announced that he still wanted to represent himself.

"THE COURT: You understand that Mr. Butler . . . is requesting that this matter be continued until . . . January 16, to enable him to have time to

complete the review of all of the files in this particular matter, and the transcripts so he would be prepared to represent you at the time of the reconsideration of the sentencing in this matter. You still wish to represent yourself, and not have Mr. Butler do that additional work and be prepared?

"THE DEFENDANT: For the purpose of the resentence, yes, I wish to represent myself.

"THE COURT: I guess the problem I have with this is that the Public Defender's Office is representing him on this matter for quite a number of years. I realize that Mr. Morris, the man who represented you on this matter back in the 1980s is now deceased. Consequently, obviously, not able to represent you in this matter. He was the one that was familiar. He filed all the paperwork in the case. I'm somewhat reluctant, but actually, it's not my reluctance that governs this matter. It's a question of whether or not you are fully aware of the consequences of representing yourself.

"I think based upon the history of this particular case, and the number of times that you have been in court, and the representations that you've had, I think you're fully aware, probably more so than most of us, as to what is taking place and has taken place in this case. You're the only one who's present here today who sat through all of these hearings, and trials, and motions. All of the rest of us, myself included, came in after—at the end. I came in simply because Judge Mortland . . . had retired and then passed away. Mr. Butler is here because [of] the fact that Mr. Morris passed away, and Mr. Mitchell is here because Mr. Astin from his office is no longer a member of the District Attorney's Office, and hasn't been for the last two or three years.

"Having made all those comments, and knowing the history of this particular matter, I am going to grant your motion to represent yourself at the resentencing hearing in this particular matter, and therefore, we will not be continuing the matter unless you wish to have it continued to January so that you can be prepared.

"THE DEFENDANT: No, I'm fully prepared today if you wish to do so.

"THE COURT: We'll keep it on calendar for next Friday."

At this point, the district attorney spoke up and urged the court to "make a couple of other inquiries regarding his understanding of what the issues are on that motion."

"THE COURT: You understand, sir, this matter was sent back by the Supreme Court for my reconsideration of the issue of whether or not the death penalty provision recommended by the jury should be set aside. It's an automatic appeal. I had previously indicated that I would not set that aside, and I did impose the death sentence. The Supreme Court has sent it back, as you're fully aware, I'm sure, in your conversations with counsel, in reading the documents, that I did not make it clear that I was exercising my own personal judgment, and not simply deferring to the jury's recommendations.

"So the subject matter of our hearing would be the question of whether or not the death penalty should be imposed, or whether it should be set aside, and life without the possibility of parole entered in place thereof. That's what we're going to be determining next Friday on our calendar, our 8:30 a.m. calendar. . . . [¶] And I think that, I should . . . I shouldn't say I think. I'm aware of the fact that Mr. Burgener is fully aware of the circumstances of this case. As I previously noted, he has more knowledge of this case, probably, than of us that are present, although we have all read the transcript. Albeit, Mr. Butler has indicated that he hadn't completed his review of the total amount of transcripts, but I'm going to allow Mr. Burgener to represent himself in this particular matter. He meets all of the criteria that is required for a person who represents himself, and I will relieve the Public Defender's Office from further representation . . . in this matter, because if the death penalty is reimposed next Friday, it would be an automatic appeal, and counsel would be appointed by the Supreme Court to represent the defendant.

"MR. MITCHELL: I don't mean to interrupt. I know the Court just related what the issues were, but I don't know that the Court actually got an acknowledgement from Mr. Burgener he understands those issues, and has a right to argue against the Court affirming the jury's verdict.

"THE DEFENDANT: Yes, I do understand all that.

"MR. MITCHELL: Thank you, Mr. Burgener.

"THE DEFENDANT: I understand everything that you've said."

Defendant did not submit any additional briefing in support of his section 190.4(e) application and his argument to the court at the hearing was very brief: "The only thing I have to say is I maintain my innocence; therefore, I cannot argue mitigation. That's all I have to say."

B. *Whether Defendant's Waiver of Counsel Was Knowing and Intelligent*

■ "A criminal defendant has a right, under the Sixth Amendment to the federal Constitution, to conduct his own defense, provided that he knowingly

and intelligently waives his Sixth Amendment right to the assistance of counsel. (*Faretta, supra*, 422 U.S. at pp. 835–836; *People v. Bradford* (1997) 15 Cal.4th 1229, 1363 [65 Cal.Rptr.2d 145, 939 P.2d 259].) A defendant seeking to represent himself 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." [Citation].' (*Faretta, supra*, 422 U.S. at p. 835.) 'No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation.' (*People v. Koontz* (2002) 27 Cal.4th 1041, 1070 [119 Cal.Rptr.2d 859, 46 P.3d 335].) Rather, 'the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case.' (*Ibid.*; accord, *People v. Lawley* (2002) 27 Cal.4th 102, 140 [115 Cal.Rptr.2d 614, 38 P.3d 461]; *People v. Marshall* (1997) 15 Cal.4th 1, 24 [61 Cal.Rptr.2d 84, 931 P.2d 262].)" (*People v. Blair* (2005) 36 Cal.4th 686, 708 [31 Cal.Rptr.3d 485, 115 P.3d 1145].) Thus, "[a]s long as the record as a whole shows that the defendant understood the dangers of self-representation, no particular form of warning is required." (*People v. Pinholster* (1992) 1 Cal.4th 865, 928–929 [4 Cal.Rptr.2d 765, 824 P.2d 571]; accord, *U.S. v. Lopez-Osuna* (9th Cir. 2001) 242 F.3d 1191, 1199 ["the focus should be on what the defendant understood, rather than on what the court said or understood"].)

On appeal, we independently examine the entire record to determine whether the defendant knowingly and intelligently waived the right to counsel. (*People v. Doolin* (2009) 45 Cal.4th 390, 453 [87 Cal.Rptr.3d 209, 198 P.3d 11].)

The record indicates the trial court was aware of its duty to advise defendant of the dangers and disadvantages of self-representation. Promptly upon learning of defendant's interest in representing himself, the court stated, "I think I would be remiss if I didn't advise you at least with regard to certain possible pitfalls with regard to self-representation." Then, at the subsequent hearing, the court acknowledged that its own opinion on the matter was not determinative: "It's a question of whether or not you are fully aware of the consequences of representing yourself."

The record concerning *defendant's understanding* of the dangers and disadvantages of self-representation, however, is rather thin. Despite the foregoing statements of intent, the court did not actually follow through and advise defendant of the "possible pitfalls" or "consequences" of self-representation. Instead, the court simply *assumed* that defendant was aware of

them, at first declaring, "I'm sure that you're familiar with all of the obligations and—that are concerned in this particular matter, what the consequences are." The court added later that defendant was "the only one who's present here today who sat through all of these hearings, and trials, and motions" and therefore had "more knowledge of this case, probably, than of us that are present" and was "fully aware, probably more so than most of us, as to what is taking place and has taken place in this case." Far from explaining the risks of self-representation, these statements reasonably would have conveyed to the listener that the greater danger lay with continuing to be represented by counsel. (*People v. Noriega* (1997) 59 Cal.App.4th 311, 321 [69 Cal.Rptr.2d 127].) This is plainly insufficient to establish a knowing and intelligent waiver of the right to the assistance of counsel.

 The Attorney General argues, correctly, that the scope of a proper advisement of the right to counsel depends on the particular facts and circumstances of the case as well as the stage of the proceedings. (*Iowa v. Tovar* (2004) 541 U.S. 77, 88 [158 L.Ed.2d 209, 124 S.Ct. 1379].) The high court has adopted "a 'pragmatic approach to the waiver question,' one that asks 'what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage,' in order 'to determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized.' " (*Id.* at p. 90.)

In this case, defendant asked to represent himself for the limited purpose of the trial court's reconsideration of his application to modify the verdict under section 190.4(e). Such a proceeding differs markedly from a trial on the merits, which involves voir dire of potential jurors, the examination and cross-examination of witnesses, and jury instructions. (*U.S. v. Salemo* (3d Cir. 1995) 61 F.3d 214, 219 ["the [*Faretta*] inquiry at sentencing need only be tailored to that proceeding and the consequences that may flow from it" and "need not be as exhaustive and searching as a similar inquiry before the conclusion of trial"].) Indeed, an application for modification of the death penalty verdict is based only on evidence that has already been presented to the jury (*People v. Burgener, supra,* 29 Cal.4th at pp. 888–889), and the application in this case had already been briefed. These circumstances may have justified a less searching or formal colloquy in response to defendant's request to represent himself. But they did not relieve the court of its duty altogether to ensure that defendant be made aware "of the hazards ahead" if he proceeded without the assistance of counsel. (*Iowa v. Tovar, supra,* 541 U.S. at p. 89.) In this instance, defendant was told only of the benefits of self-representation, not its risks or disadvantages.

■ The Attorney General contends that the court's colloquy was nonetheless sufficient in that "the trial court's warning to Burgener that by electing to represent himself he would be giving up the assistance of his appointed counsel communicated to Burgener the 'disadvantages of proceeding pro se,' and that is all *Faretta* requires." Indeed, this sophistic contention constitutes the entirety of the Attorney General's argument. Not surprisingly, the Attorney General offers no authority for the proposition that a trial court discharges its duty to ensure a defendant " 'actually . . . understand[s] the significance and consequences' of the decision" to waive counsel (*People v. Stewart* (2004) 33 Cal.4th 425, 513 [15 Cal.Rptr.3d 656, 93 P.3d 271]) by informing the defendant that self-representation means that the defendant will not be represented by counsel. Such a construct "conflates [defendant]'s determination to proceed pro se, with his understanding of the challenges of doing so." (*U.S. v. Crawford* (8th Cir. 2007) 487 F.3d 1101, 1106.) Informing a defendant that self-representation means a waiver of counsel is not an advisement of the associated dangers and disadvantages; it is merely a rephrasing of the defendant's choice. (*People v. Barnum* (2003) 29 Cal.4th 1210, 1221 [131 Cal.Rptr.2d 499, 64 P.3d 788] ["A defendant who . . . chooses self-representation necessarily forgoes counsel's assistance"]; *People v. Koontz, supra*, 27 Cal.4th at p. 1070 ["In order to make a valid waiver of the right to counsel, a defendant 'should be made aware of the dangers and disadvantages of self-representation . . . .' "]; see also *People v. Noriega, supra*, 59 Cal.App.4th at pp. 317, 319–320.) ■ On this record, where the trial court not only failed to advise defendant that the district attorney would be both experienced and prepared, that defendant would receive no special consideration or assistance from the court and would be treated like any other attorney, that he would have no right to standby or advisory counsel, or that he would be barred from challenging on appeal the adequacy of his representation, but instead actively encouraged defendant to represent himself, we cannot conclude that defendant's waiver of counsel was knowing and intelligent. (See *People v. Noriega, supra*, 59 Cal.App.4th at pp. 319–321.)

We therefore turn to the question of prejudice. Defendant contends that we recognized a rule of automatic reversal for defective *Faretta* waivers in *People v. Crayton* (2002) 28 Cal.4th 346 [121 Cal.Rptr.2d 580, 48 P.3d 1136]. Yet *Crayton* involved a distinct issue—i.e., a failure to readvise a defendant who had previously elected self-representation of his or her right to counsel at the arraignment in superior court—and we held that the omission was subject to harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]. As to the circumstance presented here, we observed in dicta only that "a reversible per se rule *may* apply under California

Constitution, article VI, section 13, when a defendant erroneously is denied the right to counsel or never has knowingly or voluntarily waived that right . . . ." (*Crayton, supra,* 28 Cal.4th at p. 364, italics added.) The United States Supreme Court similarly has not yet decided whether a defective *Faretta* waiver is reversible per se, although it has stated somewhat cryptically that the right to be represented by counsel, "as with most constitutional rights, [is] subject to harmless-error analysis . . . unless the deprivation, by its very nature, cannot be harmless. See, e.g., *Gideon* v. *Wainwright,* 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792] (1963)." (*Rushen v. Spain* (1983) 464 U.S. 114, 119, fn. 2 [78 L.Ed.2d 267, 104 S.Ct. 453], citations omitted (per curiam).)

Courts in our own state are divided. Some courts have held that the absence of a knowing and intelligent waiver of the right to counsel is reversible per se. (E.g., *People v. Hall* (1990) 218 Cal.App.3d 1102, 1108–1109 [267 Cal.Rptr. 494]; *People v. Lopez* (1977) 71 Cal.App.3d 568, 571 [138 Cal.Rptr. 36].) Other courts hold that the failure to obtain a knowing and intelligent waiver is prejudicial unless the People can show beyond a reasonable doubt that the defendant would have waived counsel even with proper advisements (e.g., *People v. Wilder* (1995) 35 Cal.App.4th 489, 500–502 [41 Cal.Rptr.2d 463] (*Wilder*) [applying *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]]) or that the absence of counsel had no effect on the outcome of the proceeding (e.g., *People v. Cervantes* (1978) 87 Cal.App.3d 281, 293–294 [150 Cal.Rptr. 819] [same]).

The division in the federal circuits is narrower. With one exception, every federal circuit to have considered the issue has concluded "that harmless error analysis is inapplicable to failure-to-warn *Faretta* violations." (*U.S. v. Virgil* (5th Cir. 2006) 444 F.3d 447, 455, overruling *Richardson v. Lucas* (5th Cir. 1984) 741 F.2d 753; see *Cordova v. Baca* (9th Cir. 2003) 346 F.3d 924, 929–930 & fn. 7 [declaring that *Wilder, supra,* 35 Cal.App.4th 489, is "an outlier," its reasoning "suspect," and its ruling " 'contrary to' a long line of Supreme Court cases"]; *U.S. v. Allen* (10th Cir. 1990) 895 F.2d 1577, 1579–1580, overruling *United States v. Gipson* (10th Cir. 1982) 693 F.2d 109; *Strozier v. Newsome* (11th Cir. 1989) 871 F.2d 995, 997 & fn. 3; *United States v. Welty* (3d Cir. 1982) 674 F.2d 185, 194, fn. 6; see generally Duvall, *Judicial Review of Right-to-Counsel Violations That Occur at Sentencing: The Rule of Automatic Reversal and the Doctrine of Harmless Error* (2008) 23 St. John's J. Legal Comment. 111.) One circuit has held that the *Chapman* standard may be applied to a defective *Faretta* waiver at sentencing in "the unique circumstance presented . . . when the district court lacked the authority to impose a more lenient sentence than the defendant received." (*U.S. v. Crawford, supra,* 487 F.3d at p. 1108; see also *U.S. v. Salemo, supra,* 61 F.3d 214, 223, fn. 1 (conc. opn. of Alito, J.) [noting the "strange results" of an inflexible rule of automatic reversal; "suppose that a defendant does not validly waive counsel at sentencing but is given the mandatory minimum

sentence prescribed by statute"].) Under those circumstances, "there is nothing *any* attorney could have done to achieve a more favorable result at sentencing." (*Crawford, supra,* 487 F.3d at p. 1108.) That exception, of course, is inapplicable here.

We need not decide which standard of prejudice applies, however, because defendant would be entitled to relief even if the error were subject to harmless-error review under *Chapman* in some form. (*People v. Fabricant* (1979) 91 Cal.App.3d 706, 713–714 [154 Cal.Rptr. 340].) Defendant had not previously represented himself in this case at any stage. Indeed, there is no evidence that he had ever represented himself in any criminal proceeding. Moreover, there was no evidence that he had sought to abuse his *Faretta* right (cf. *Wilder, supra,* 35 Cal.App.4th at p. 503) or that he had been offered counsel subsequent to his waiver and had refused it (cf. *People v. Cervantes, supra,* 87 Cal.App.3d at p. 294). The record also reveals that defendant's formal education after the age of 11 or 12 was rather erratic, that he had spent most of his adult life in prison, and that he suffered from adjustment and personality disorders. (*People v. Burgener, supra,* 29 Cal.4th at pp. 854–855.) One cannot say beyond a reasonable doubt that defendant would have waived the assistance of counsel if the trial court had refrained from actively encouraging him to represent himself and had instead advised him of the risks of self-representation, nor can one say beyond a reasonable doubt that the resolution of the section 190.4(e) application (on which different jurists had already expressed divergent views) would have been the same had counsel been present. Finally, we note that the People have not even argued that a defective *Faretta* waiver is amenable to harmless error analysis or that the error here was harmless—which is significant, inasmuch as it would be their burden, under the harmless error inquiry, to establish the absence of prejudice. (*Chapman v. California, supra,* 386 U.S. 18, 24.)

We therefore are compelled to vacate the judgment of death and remand to the superior court for yet another hearing on the application for modification of the death penalty verdict. Because Judge Heumann has since passed away, the motion shall be heard before another judge of the same court. (*People v. Burgener, supra,* 29 Cal.4th at p. 892, fn. 9; see also *People v. Lewis* (2004) 33 Cal.4th 214, 225–226 [14 Cal.Rptr.3d 566, 91 P.3d 928].)

### DISPOSITION

The judgment of death is vacated and the cause remanded to the superior court for reconsideration of defendant's request to represent himself (unless defendant withdraws his request in the interim) and the automatic application for modification of the death verdict. (See *People v. Crayton, supra,* 28 Cal.4th at pp. 362–363.) If the superior court, upon application of the appropriate

standards, denies the application for modification of the verdict, it shall reinstate the judgment of death. If it grants the application, it shall enter a judgment of life imprisonment without the possibility of parole. Any subsequent appeal shall be limited to issues related to the modification application. (See *People v. Burgener, supra*, 29 Cal.4th at p. 893.)

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.