Filed 9/10/14  P. v. Cleveland CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B251308 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. NA093355) |
| ROBERT CLEVELAND, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Gary J. Ferrari, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Chung L. Mar and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Robert Cleveland (defendant) appeals from his conviction of failure to register as a sex offender. He contends that the judgment must be reversed because he was inadequately advised of the dangers of self-representation, resulting in an invalid waiver of his constitutional right to counsel. He also contends that the trial court should have granted his request for self-representation sooner or granted a continuance to permit him more time to prepare for trial. We find no merit to defendant's contentions and affirm the judgment.

## BACKGROUND

**Procedural history and prosecution evidence**

Defendant was charged with failure to register after an address change in violation of Penal Code section 290, subdivision (b).[1] The information also alleged that defendant had suffered 11 prior serious or violent felony convictions or juvenile adjudications within the meaning of the "Three Strikes" law (§§ 667, subd. (b)-(i), 1170.12, subd. (a)-(d)), and had served five prior prison terms within the meaning of section 667.5, subdivision (b).

The evidence showed that defendant had been convicted of a violation of section 288a in 1972 and several counts of section 288, subdivision (b) in 1992.[2] Parole Agent Kimiko Hamaya testified that defendant failed to report to the office within 24 hours after his most recent release from custody on August 1, 2012. Agent Hamaya contacted Long Beach Police Detective Sean Irving, who testified that he checked the sex offender registry and found that defendant had signed acknowledgements of his registration requirements, had registered or updated his registration in 2002, 2003, 2011, and 2012, and that his last registration had been filed on June 4, 2012. However, when Detective Irving attempted to locate defendant at his last registered address, he learned that the address did not exist. Detective Irving then went to another address found in defendant's

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

[2] These convictions were for sex offenses that required lifetime annual registration as a sex offender and registration update within five days of every change of residence. (See § 290, subd. (b).)

2

parole records, where he was told that defendant no longer resided. Defendant was arrested September 11, 2012.

Defendant presented no evidence, but argued that his plea agreement in 1992 did not call for registration or monitoring, that enforcing the 2007 law that required registration would violate the terms of his plea bargain, and that the district attorney should be required to abide by the original agreement.

A jury found defendant guilty as charged and found true the prior conviction allegations. On August 1, 2013, the trial court sentenced defendant to 25 years to life in prison. The court struck the prior prison term allegations for purposes of sentencing, ordered defendant to pay mandatory fines and fees, and to register upon release. Defendant was given a total of 648 days of presentence custody credit.

Defendant filed a timely notice of appeal from the judgment.

### *Faretta* **waiver**[3]

Defendant was represented by counsel at his preliminary hearing, but on October 12, 2012, the day of his felony arraignment, defendant orally requested permission to represent himself. Defendant signed a preprinted "*Faretta* waiver," an advisement and waiver form listing his trial rights, the charges against him with potential consequences, and the common dangers and disadvantages of self-representation. Defendant acknowledged with his initials that he understood each advisement. Defendant wrote on the form that he was 58, that he had graduated from high school, had completed one year of college, had studied law, and had proceeded in pro. per. three times in the past. Three days later, the trial court warned defendant orally and in writing of the dangers and disadvantages of self-representation, saying that in 29 years, the court had seen "many people represent themselves before," and that "[m]ost of them made a big mistake." Defendant was told that in the court's experience, pro. per. defendants usually did not help themselves, but in fact "hurt themselves because they think they are smart and they are doing the right thing and people tell them in jail you should represent yourself."

---

**3**      *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

3

Defendant responded that he still wanted to represent himself. The court granted the motion, explaining that defendant had answered the questions on the form properly and the court had no reason to believe that defendant did not "have enough thinking to do it." The case was then assigned to a different judge in a trial department where a pretrial conference was scheduled for November 2, 2012.

At the pretrial conference the court explained the rules of the courtroom to defendant, ascertained that defendant had represented himself before, noted that defendant had 11 prior strikes, and allowed defendant some time to confer with the prosecutor regarding offers. The prosecutor stated her intention to proceed as a third-strike case and noted defendant's exposure was 25 years to life plus three years. The prosecutor offered eight years in prison. After defendant rejected the offer and refused to waive his speedy trial right, the trial court set a trial date.

On December 6, 2012, both sides announced ready for trial. The following day defendant requested counsel be appointed. The trial court granted the request, revoked defendant's pro. per. status, appointed counsel, and after defendant waived time, scheduled a new pretrial conference. After being continued three times, the pretrial conference was held on March 18, 2013.[4]

At the March court date, defendant filed a petition for writ of habeas corpus in pro. per., alleging errors in the 1992 case resulting in the order that he register as a sex offender. The petition was denied. The trial court stated that defendant had submitted a written *Marsden* motion[5] and held an in camera hearing in which defendant was allowed to explain his dissatisfaction with his counsel. During the hearing, defendant claimed

---

[4]    Defendant refers to the proceedings of March 18 as occurring on March 13, 2013. As there is no record of proceedings on that date, we presume a typographical error on the cover page of the sealed reporter's transcript of the *Marsden* hearing of March 18, 2013.

[5]    See *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). A *Marsden* motion seeks the appointment of new counsel due to ineffective assistance or a substantial conflict. (See *People v. Smith* (1993) 6 Cal.4th 684, 695.) Defendant's written *Marsden* motion does not appear in the record on appeal.

4

that defense counsel had failed to consult him despite telling defendant two or three times that he would "come up" to do so. Defendant denied that he had asked to have another attorney appointed, and stated he would rather proceed in pro. per. The court questioned counsel, who explained that he had consulted with defendant multiple times at the jail and at the courthouse, and had researched the defenses that defendant wished to present, but found none of them applicable. The trial court denied the motion.

In open court defendant made an oral motion to represent himself once again. The trial court found that defendant had vacillated. The court noted that defendant had been granted pro. per. status in October 2012, and he represented himself until December when he asked for counsel after announcing ready for trial. Defendant then made his second *Faretta* request only after his *Marsden* motion was denied. The court denied the *Faretta* request and scheduled trial for April 9, 2013.

On April 9, defendant served his counsel in court with summons and a civil complaint seeking damages for emotional distress. The court reviewed defendant's requests for pro. per. status and his changes of mind, and expressed the suspicion that the lawsuit was "some kind of subterfuge" to have counsel relieved or to obtain a continuance. Defendant acknowledged he was not prepared to go to trial at that time and was unaware that trial was scheduled to begin that day. The court asked, "Basically you filed the lawsuit to get him off the case, right? When you couldn't do it last time, right?" At first, defendant replied, "You're entitled to your opinion," but when the court said, "I'm asking you," defendant said, "It is a right. It is a right, a constitutional right. I can sue him or any of these other people if I feel like it." Asked whether he wanted to represent himself, defendant said, "I didn't say that." The court told defendant that everyone had the right to self-representation, and defendant replied, "I have a right to counsel, too," adding, "I have a right to a conflict-free counsel." Defense counsel declared a conflict of interest, was permitted to withdraw, and the matter was continued to the following week for a pretrial conference and appointment of new counsel.

After new counsel was appointed, trial was scheduled for June 4, 2013, trailed until June 6 and then to June 10. The minutes reflect that on June 6, defendant again

5

requested to proceed in pro. per. On June 10, defendant signed a new *Faretta* waiver, apparently after a conference earlier that morning with the court asking defendant whether he had completed his form.[6] The court's minutes reflect that the hearing commenced at 8:30 a.m., and that the trial court advised defendant "that self-representation is almost always an unwise choice, and will not work to his advantage; further, that he will not be helped or treated with special leniency by the court or the prosecutor, and that he will be held to the same standards of conduct as an attorney. Further, if he wishes to represent himself, he will not be able to claim later that he made a mistake, or that he received ineffective assistance of counsel." The minutes also reflect that the trial court found that defendant had voluntarily and intelligently chosen self-representation, that he knowingly, intelligently, understandingly, and explicitly waived his right to counsel, and that he was competent to represent himself.

Later, in the reported part of the hearing, the trial court said to defendant: "Do you understand, as I indicated to you Thursday, that I would permit you to represent yourself, assuming you are ready to proceed to trial on today's date. And I'm assuming you're ready to proceed now?" Defendant answered "Yes." The trial court granted his request to proceed in pro. per. once again and appointed standby counsel. Defendant's jury trial commenced the following day.

## DISCUSSION

Defendant contends that the judgment must be reversed for two reasons: he was inadequately advised of the dangers of self-representation; and his *Faretta* motion was improperly denied March 18, not granted until just before trial, and was conditioned upon no continuance, leaving him no time to prepare his defense.

---

[6]    As respondent observes, the record is incomplete, as there is no reporter's transcript for the proceedings of June 6 or 7, 2013. Nor does the record contain a reporter's transcript for the early morning proceedings of June 10. Defendant has not claimed that the missing parts of the record are necessary for review.

6

## I. Adequate advisement

The Sixth Amendment right to counsel implies a right of self-representation if the defendant voluntarily and intelligently so elects. (*Faretta, supra*, 422 U.S. at pp. 820-821.) "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' [Citation.]" (*Id.* at p. 835.)

We "review the entire record -- including proceedings after the purported invocation of the right of self-representation -- and determine de novo whether the defendant's invocation was knowing and voluntary. [Citations.] Even when the trial court has failed to conduct a full and complete inquiry regarding a defendant's assertion of the right of self-representation, [we] examine the entire record to determine whether the invocation of the right of self-representation and waiver of the right to counsel was knowing and voluntary. [Citations.]" (*People v. Marshall* (1997) 15 Cal.4th 1, 24 (*Marshall*).) "No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation; the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case. [Citations.]" (*People v. Koontz* (2002) 27 Cal.4th 1041, 1070.)

Defendant provides a thorough summary of the recommended warnings a trial court should give regarding the dangers of self-representation prior to finding that the defendant's waiver of the right to counsel was knowing and voluntary. He acknowledges that most such recommended warnings are found in the written *Faretta* waiver that defendant initialed and signed. He contends that because the trial court did not enter into a "substantial dialogue" regarding the warnings, there is no way to tell whether defendant understood them.

We disagree. First, there is no merit to defendant's claim that during the second *Faretta* proceeding in June 2013, the trial court failed to orally explain the dangers of

7

self-representation. As we have observed, there is no reporter's transcript of the early morning proceedings of June 10, 2013, and as respondent pointed out, there is no reporter's transcript for the proceedings of June 6, although the minutes reflect that defendant's *Faretta* request was discussed on both occasions and that standard admonishments were given.

"It is axiomatic that it is the burden of the appellant to provide an adequate record to permit review of a claimed error, and failure to do so may be deemed a waiver of the issue on appeal. [Citations.]" (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1385.) Moreover, we presume "that official duty has been regularly performed." (Evid. Code, § 664.) And error will not be presumed from a silent record. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Thus, we reject defendant's claim that there was no dialogue from which the court might discern defendant's understanding.

Second, warnings may be given in writing, and a failure to "query the defendant orally about his responses on the [*Faretta*] form, . . . does not necessarily invalidate defendant's waiver, particularly when, as here, we have no indication that defendant failed to understand what he was reading and signing." (*People v. Blair* (2005) 36 Cal.4th 686, 709 (*Blair*), overruled on a different point in *People v. Black* (2014) 58 Cal.4th 912, 919.)

Indications that defendant fully understood the dangers of self-representation may include the defendant's prior self-representation, a demonstrated ability to read and write in pro se filings, and the judge's observation that defendant appeared to be of normal intelligence. (*Blair, supra*, 36 Cal.4th at pp. 703-704, 709.) Here, the judge who granted defendant pro. per. status in October 2012 observed that defendant had answered the questions on the form properly and had given the court no reason to believe that he did not "have enough thinking to do it." Further, defendant stated on the form that he had graduated from high school, had completed one year of college, and had studied law on his own for 10 years. Defendant filed a lengthy petition for writ of habeas corpus and a motion to strike priors, and after the trial court denied his oral motion to represent himself, he served his counsel with a civil lawsuit that forced him to declare a conflict.

8

Defendant wrote on the *Faretta* form that he had represented himself in two prior matters in 1992 and 2003, and the record reflects that he represented himself in this case for two months before requesting counsel, apparently due to the difficulties of self-representation.

Finally, the trial court appointed standby counsel. More thorough advisements regarding the dangers of self-representation are unnecessary when standby counsel has been appointed for a defendant with prior self-representation experience. (See *People v. Elliott* (2012) 53 Cal.4th 535, 592.) We conclude from a review of the whole record that defendant was adequately advised of the dangers of self-representation, that he understood them, and thus that his waiver was knowingly and intelligently made.

## II. Denial of the March 18 motion

Defendant contends that he was given insufficient time to mount an adequate defense because the trial court granted his *Faretta* request in June instead of March and then did not continue the trial. Defendant contends that his March request was timely and that the trial court did not find otherwise. Defendant suggests that the sole basis for the trial court's ruling was that defendant had vacillated between wanting representation by counsel and self-representation, and that vacillating cannot justify denial of a timely *Faretta* request, because "[a] trial court must grant a defendant's request for self-representation made within a 'reasonable time' before trial." Defendant has overstated the trial court's obligation. In fact, the right of self-representation is absolute only if defendant's request was asserted a reasonable time before trial, *and* it was unequivocal, knowingly and voluntarily made. (*People v. Doolin* (2009) 45 Cal.4th 390, 453.) Thus, a trial court may properly deny an equivocal request whether timely or untimely. (*Ibid*.)

Whether a request was unequivocal must be determined from a review of the entire record. (*Marshall*, *supra*, 15 Cal.4th at pp. 23-24.) "Because the court should draw every reasonable inference against waiver of the right to counsel, the defendant's conduct or words reflecting ambivalence about self-representation may support the court's decision to deny the defendant's motion. A motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied." (*Id*. at p. 23.)

9

The trial court's ruling was not based solely upon defendant's prior vacillation, as defendant suggests. As the court noted, defendant asserted his *Faretta* rights at his felony arraignment, represented himself until the day first set for trial, when he requested counsel. Defendant made his second *Faretta* request only after the court denied his *Marsden* motion. A *Faretta* request is properly denied when "it appears defendant attempted to subvert the orderly administration of justice by 'juggling his *Faretta* rights with his right to counsel interspersed with *Marsden* motions" [citation], along with possible efforts to mislead the court . . . ." (*Marshall, supra*, 15 Cal.4th at p. at p. 26.) An invocation of the right of self-representation is not unequivocal when made for the purpose of delay rather than in a sincere effort to secure self-representation. (*People v. Danks* (2004) 32 Cal.4th 269, 295; *Marshall, supra*, 15 Cal.4th at pp. 21-22.)

We agree with respondent that considering all the circumstances, the record demonstrates that defendant's second assertion of his *Faretta* rights was "a vehicle for manipulation and abuse." (*Marshall, supra*, 15 Cal.4th at p. at p. 22.) The events of April 9, 2013, the next date set for trial, demonstrate the insincerity of the request made in March. Defendant's claim that he did not know that trial was scheduled to begin that day was not credible in light of the summons and complaint he served on his attorney, forcing his attorney to declare a conflict of interest. Defendant's comments to the court reveal an apparent ploy to delay trial. Apparently prepared to allow defendant to represent himself at that time, the trial court asked whether defendant wanted to represent himself. Defendant replied, "I didn't say that," and told the court, "I have a right to a conflict-free counsel." When the court suggested that trial might go forward that day, defendant said, "I don't see how you're going to start a trial with an attorney that I have a lawsuit against." Defendant waived his speedy trial rights so that trial could be continued for the appointment of new counsel. One month later, however, after new counsel was appointed and was ready for trial, defendant again asked to represent himself. As the circumstances both before and after March 18 demonstrate that defendant's effort to secure self-representation was neither unequivocal nor sincere, there was no error in denying the *Faretta* request.

10

We also find no merit to defendant's contention that he was denied a fair trial when the trial court conditioned granting his *Faretta* request in June on his agreement to go to trial immediately. There is no record of the oral proceedings of June 6, 2013, when defendant made his final *Faretta* motion and agreed that there would be no continuance; however, defendant agrees that the trial court imposed the condition because the *Faretta* request was untimely. Defendant argues that the request was untimely only because it had previously been improperly denied, and thus the condition imposed by the trial court was error.

"It is true that if a court grants a defendant's untimely *Faretta* request, it must also grant a reasonable continuance, if necessary, so that defendant may prepare for trial. [Citations.] However, if the court determines the defendant's request is merely a tactic designed to delay the trial, the court has the discretion to deny the continuance and require the defendant to proceed to trial as scheduled either with his counsel or in propria persona. [Citations.]" (*People v. Douglas* (1995) 36 Cal.App.4th 1681, 1689; accord, *People v. Valdez* (2004) 32 Cal.4th 73, 102.) We have already determined that defendant's March request was properly denied as insincere and a probable attempt to delay or otherwise manipulate the proceedings. Defendant has thus established no abuse of discretion in conditioning self-representation on an immediate trial.

Nor does it appear that defendant was prejudiced under any standard. As we have not found an ineffective *Faretta* waiver and the trial court did not deny defendant's last *Faretta* motion, we need not reach defendant's contention that the judgment is reversible per se. (See generally, *People v. Burgener* (2009) 46 Cal.4th 231, 243-245.) Defendant suggests that any harmless error analysis should be made according to the test of *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*), under which respondent must demonstrate that constitutional error was harmless beyond a reasonable doubt. Defendant argues that respondent cannot establish that the error was harmless beyond a reasonable doubt, "given that no defense was presented because none could be mustered within two days by an incarcerated pro per defendant, particularly in a case that would have required the appointment of defense experts."

11

Defendant's claim of having two days to prepare is disingenuous:  fully five months before trial, after proceeding in pro. per. for two months, defendant represented to the court in December 2012 that he was ready for trial.  In addition, defendant never expressed the need for experts until his oral motion for new trial on the day of sentencing, August 1, 2013.  Moreover, defendant had no defense to prepare.  His opening statement and the habeas corpus petition filed in March 2013 show that his chosen defense was that the sex-offender registration law changed in 2007 and that enforcement of the new law constituted a breach of his 1992 plea agreement.  A similar contention was before the California Supreme Court at the time of defendant's trial and had been rejected by the time of defendant's motion for new trial.  (See *Doe v. Harris* (2013) 57 Cal.4th 64.)  Thus, additional time to prepare such a defense would have been of no assistance to defendant.  Further, in the March 2013 *Marsden* hearing, former defense counsel told the court that he had researched the defenses suggested by defendant and had found none of them applicable or relevant.

Finally, defendant does not suggest what he would have done differently at trial had he more time.  Under such circumstances, even if defendant had shown an abuse of discretion and even if we agreed that the *Chapman* standard was applicable, we would find any error harmless beyond a reasonable doubt.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.*
FERNS

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13